JOSEPH FORTIN ET AL. *v.* HARTFORD
UNDERWRITERS INSURANCE
COMPANY ET AL.
(AC 31111)

Bear, Espinosa and Mihalakos, Js.

Argued December 5, 2011—officially released January 1, 2013

*Eric W. Callahan*, with whom, on the brief, were *Matthew E. Auger* and *Erin C. O'Leary*, for the appellants-cross appellees (plaintiffs).

*Frank H. Santoro*, with whom, on the brief, were *R. Cornelius Danaher, Jr.*, and *Calum B. Anderson*, for the appellee-cross appellant (defendant North River Insurance Company).

*Opinion*

ESPINOSA, J. The plaintiffs, Joseph Fortin, Samuel Kofkoff, Robert Kofkoff and Kofkoff Egg Farm, LLC, in this civil action concerning insurance benefits appeal from the summary judgment rendered in favor of the defendant North River Insurance Company.[1] The plaintiffs claim that the court improperly (1) granted the defendant's motion to preclude testimony from one of the plaintiffs' witnesses, (2) granted summary judgment in the defendant's favor after granting its motion to preclude and (3) denied five postjudgment motions. We affirm the judgment of the trial court.

The record discloses the following procedural history. In 2003, the plaintiffs filed a four count complaint against the defendant and Hartford. Counts one and two, sounding in breach of contract and breach of the implied covenant of good faith and fair dealing, respectively, were directed against Hartford. Count three,

---

[1] In addition to North River Insurance Company, the plaintiffs brought this action against the named defendant, Hartford Underwriters Insurance Company (Hartford). After the court rendered summary judgment in Hartford's favor, the plaintiffs and Hartford reached a settlement. As Hartford is not a party to this appeal, we will refer to North River Insurance Company as the defendant throughout this opinion.

sounding in breach of contract, was directed against the defendant. Count four, seeking declarations of coverage, was directed against both the defendant and Hartford.

As relevant, the plaintiffs alleged that, in connection with their businesses, on or about October 1, 1984, they purchased a liability insurance policy from Hartford. By virtue of the policy, Hartford agreed to defend any action against the plaintiffs that alleged certain types of personal or advertising injury, and to pay damages arising from such injury. The policy was effective from October 1, 1984, to October 1, 1985. On or about July 31, 1984, the plaintiffs purchased an insurance policy from the defendant that "served as the umbrella insurance coverage over and above the underlying insurance policy issued to the plaintiffs by Hartford." The policy insured the plaintiffs against certain liabilities in connection with the plaintiffs' businesses. The excess liability policy was effective from July 31, 1984, to October 1, 1985.

The plaintiffs alleged that, on May 6, 1998, they became third party defendants in an action brought by Connecticut National Bank against Julius Rytman and Dora Rytman. The Rytmans alleged that, among other things, the plaintiffs published slanderous statements concerning them and that these statements caused the Rytmans' bank, Connecticut National Bank, to conduct a fraud investigation of the Rytmans' records. Later, in the Connecticut National Bank action, the Rytmans brought additional claims against the plaintiffs. The plaintiffs allege that these claims gave rise to coverage under the policies that they purchased from Hartford and the defendant.

The plaintiffs alleged that they promptly notified Hartford and the defendant of the claims brought against them by the Rytmans. Initially, Hartford

acknowledged its duty to defend the plaintiffs in the action, retained counsel on behalf of the plaintiffs and undertook a defense on behalf of the plaintiffs. Later, during the pendency of the action, Hartford disclaimed any and all coverage, and declined to provide any further representation to the plaintiffs or to indemnify the plaintiffs for any financial obligations incurred as a result of the action. The defendant, for its part, having been requested by the plaintiffs to participate in ongoing settlement negotiations, did not defend the plaintiffs or participate in settlement negotiations. It notified the plaintiffs that it fully reserved its right to disclaim any coverage in the action.

The plaintiffs alleged that as a result of a mediation session in September, 2002, they reached a monetary agreement with the Rytmans to settle all claims in the Connecticut National Bank action. Like Hartford, the defendant did not participate in the mediation session and did not indemnify the plaintiffs in any manner. The plaintiffs alleged that the defendant failed to oversee the progress of the litigation, including the manner in which Hartford represented their interests, and that the defendant breached its insurance contract with the plaintiffs by failing to contribute moneys toward the plaintiffs' defense, failing to participate in the mediation session and failing to contribute moneys toward the plaintiffs' settlement obligation. The plaintiffs alleged that, as a consequence of the defendant's conduct, they suffered financial loss. Lastly, the plaintiffs sought "[a] declaratory judgment determining the rights and duty of . . . [the defendant] to have defended and indemnified the [p]laintiffs in the [Connecticut National Bank] action . . . ."

Subsequently, the court granted a motion for partial summary judgment filed by the plaintiffs with regard to counts three and four of their complaint. The court ruled that Hartford had a duty to defend the plaintiffs,

and that the defendant had a duty to defend the plaintiffs during those periods of time in which Hartford failed to provide a defense.[2]

The plaintiffs disclosed Dale P. Faulkner, an attorney, as an expert witness in this action and represented that he would testify about the circumstances surrounding the plaintiffs' settlement in the underlying action, including the objective reasonableness of the settlement amount paid by the plaintiffs.[3] The defendant filed a motion to preclude Faulkner from testifying on the following grounds: "(1) his opinion is based upon insufficient facts and, therefore, is without an adequate foundation; (2) he does not know the amount of consideration that the plaintiffs paid to settle the [Connecticut National Bank] action; and (3) he failed to apply a reliable methodology to form his opinion." The defendant also filed a motion for summary judgment on the ground that the plaintiffs were unable to prove an essential element of their case because they were unable to prove that their settlement with the Rytmans was objectively reasonable. Thus, the defendant argued that it was entitled to judgment as a matter of law. The plaintiffs objected to both defense motions.

The court considered the motion to preclude in the context of a hearing on the motion for summary judgment. In a thorough memorandum of decision, which

[2] The defendant has brought what it deems to be a "contingent cross appeal," seeking appellate review of this ruling in the event that the plaintiffs are able to prevail in their appeal. In light of our resolution of the plaintiffs' claims, we do not reach this issue raised by the defendant.

[3] Specifically, the plaintiffs represented: "Faulkner will opine that: (1) Kofkoff settled the Rytman litigation for a reasonable amount, and the settlement amount and process were free from collusion, fraud or bad faith; (2) The settlement process employed by the parties in the Rytman matter was reasonable, was managed by extremely experienced mediators, and resulted in a reasonable settlement; and (3) The basis on which Robert Kofkoff, on behalf of the Kofkoff group, decided to settle the Rytman litigation, and the analysis he employed, were reasonable, rational, logical, founded in facts as he understood them at that time, and performed in good faith."

was issued on February 19, 2009, the court granted both of the defendant's motions. In granting the motion to preclude, the court reasoned that the plaintiffs were unable to demonstrate that Faulkner's opinion was based on sufficient facts and, thus, that his testimony would assist the trier of fact in understanding the evidence or in determining the objective reasonableness of the settlement paid by the plaintiffs. The court granted the motion for summary judgment on the ground that the plaintiff bore the burden of demonstrating by expert evidence that its settlement was objectively reasonable and that, absent Faulkner's testimony, the plaintiffs lacked such evidence. Later, the court denied the plaintiffs' two motions to reargue, two motions to modify the court's scheduling order for the purpose of permitting disclosure of additional expert testimony and motion to set aside and/or open the summary judgment rendered in the defendant's favor. The plaintiffs appeal from all of these rulings. Additional facts will be set forth as necessary.

I

First, the plaintiffs claim that the court improperly granted the defendant's motion to preclude testimony from Faulkner. We disagree.

We begin our analysis by setting forth our standard of review. "Ordinarily, a trial court's ruling on the admissibility of an expert's testimony at trial is subject to the deferential scope of review of abuse of discretion. . . . That scope of review does not apply, however, where the trial court has excluded such testimony in connection with a summary judgment proceeding.

"It is well settled that our scope of review of a trial court's determination on a motion for summary judgment is plenary. . . . Where, as here, the trial court ruled the expert's testimony inadmissible in the course

of summary judgment proceedings, it would be inconsistent with that plenary scope of review to subject a particular subset of the trial court's determinations in those proceedings, namely, the admissibility of an expert's opinion, to the highly deferential abuse of discretion scope of appellate review.

"Furthermore, it would be inconsistent with the well settled principles of summary judgment jurisprudence that the burden is on the movant to establish that there is no genuine issue of material fact involved in the case, and that the facts must be viewed in the light most favorable to the nonmoving party, to subject the court's ruling on the admissibility of [the expert's] opinion to an abuse of discretion scope of review. The abuse of discretion standard for appellate review assumes that the trial court had discretion and therefore could have reasonably ruled either way; to apply a deferential scope of review to its ruling, where as here it excluded the expert's testimony, would be inconsistent with the movant's burden to establish that there is no genuine issue of fact, and with the notion that the facts are to be viewed in the light most favorable to the nonmoving party. Put another way, because the movant in a summary judgment proceeding has the burden to show that there is no genuine issue of fact and the facts are to be viewed in the light most favorable to the nonmoving party, a trial court in such a proceeding would be obligated to exercise its discretion in favor of the nonmoving party's offer of evidence. Similarly, in applying our plenary scope of review to the question of the admissibility of [the expert's] testimony, the same considerations compel us to resolve any doubts about that question in favor of admissibility." (Citations omitted.) *DiPietro v. Farmington Sports Arena, LLC,* 123 Conn. App. 583, 610–11, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49 A.3d 951 (2012).[4]

---

[4] The plaintiffs urge us to apply the plenary standard of review set forth in *DiPietro* to the present claim. The defendant, however, urges us not to

apply the plenary standard of review to the present claim because this court's standard of review holding in *DiPietro* (1) conflicts with federal and state precedent and (2) should not govern review of the trial court decision, which predated it.

With regard to the first argument, we observe that this court, in *DiPietro*, acknowledged that its holding conflicted with federal precedent, yet in its analysis of the issue determined that its holding was consistent with Connecticut's summary judgment jurisprudence. *DiPietro* v. *Farmington Sports Arena, LLC,* supra, 123 Conn. App. 612 n.14. Neither this court in *DiPietro* nor the defendant in the present case has drawn our attention to Supreme Court precedent that governs this specific issue. Such authority unquestionably would control our analysis. "It is axiomatic that this court, as an intermediate body, is bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *Coyle Crete, Ltd.* v. *Nevins,* 137 Conn. App. 540, 560–61, 49 A.3d 770 (2012). Although the defendant implicitly invites us to reexamine this court's standard of review holding in *DiPietro,* under these circumstances, adherence to the principle of stare decisis does not warrant such action. See, e.g., *Wilson* v. *Stamford,* 81 Conn. App. 339, 345 n.3, 840 A.2d 553 ("[t]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it" [internal quotation marks omitted]), cert. denied, 268 Conn. 918, 847 A.2d 312 (2004). During the pendency of this appeal, our Supreme Court granted certification to appeal in *DiPietro* and one of the certified questions was the propriety of this court's standard of review holding. *DiPietro* v. *Farmington Sports Arena, LLC,* 299 Conn. 920, 921, 10 A.3d 1053 (2010). Ultimately, the Supreme Court reversed this court's judgment in *DiPietro* without reaching that certified question. *DiPietro* v. *Farmington Sports Arena, LLC,* 306 Conn. 107, 111 n.2, 49 A.3d 951 (2012).

With regard to the second argument advanced by the defendant, it correctly observes that this court's decision in *DiPietro* was officially released on September 14, 2010, and the court's memorandum of decision concerning the motion to preclude and for summary judgment was issued on February 19, 2009. The defendant argues that this court's standard of review holding in *DiPietro* either established a new principle of law, overruled established precedent or decided an issue of first impression in a manner that was not clearly foreshadowed, and that for any of these reasons the standard of review holding should not be applied retroactively. "[A]s a general rule, judicial decisions apply retroactively. . . . A decision will not be applied retroactively only if (1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Citation omitted; internal quotation marks omitted.) *State* v. *Fabricatore,* 89 Conn. App. 729, 744, 875 A.2d 48 (2005), aff'd, 281 Conn. 469, 915 A.2d 872 (2007).

"A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue." Conn. Code Evid. § 7-2. "An expert may testify in the form of an opinion and give reasons therefor, provided sufficient facts are shown as the foundation for the expert's opinion." Conn. Code Evid. § 7-4 (a).

Our case law reflects the principle that an expert opinion is entitled to weight on the issues for which it is admitted only when it is based on the facts at issue in the case. "Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . In other words, [i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Citations omitted; internal quotation marks omitted.) *Sullivan* v. *Metro-North Commuter*

"The issue of retroactivity of decisional law is a question of policy to be decided by a state's Supreme Court, and may be decided by the policy consideration of whether litigants could be deemed to have relied on past precedent or whether the 'new' resolution of an 'old' issue was foreshadowed, or whether equity, given the particular facts, requires a prospective application only." *Perkins* v. *Fasig*, 57 Conn. App. 71, 75, 747 A.2d 54, cert. denied, 253 Conn. 925, 754 A.2d 797 (2000).

*DiPietro*'s relevant holding governs the legal standard by which a court should evaluate a motion to preclude in conjunction with a motion for summary judgment. It governs our proper standard of review in this case. It is unpersuasive to suggest, as the defendant does, that this court's present application of the standard set forth in *DiPietro*, a decision which predates the filing of the parties' appellate briefs, let alone our consideration of this appeal, gives rise to any of the concerns set forth in the preceeding paragraph. That is, the defendant has not argued, let alone demonstrated, that it relied to its detriment on one legal standard over another during the events underlying this dispute, the underlying trial or in bringing the present appeal.

*Railroad Co.*, 292 Conn. 150, 158, 971 A.2d 676 (2009). "The essential facts on which an expert opinion is based are an important consideration in determining the admissibility of the expert's opinion. . . . Where the factual basis of an opinion is challenged the question before the court is whether the uncertainties in the essential facts on which the opinion is predicated are such as to make an opinion based on them without substantial value." (Citation omitted; internal quotation marks omitted.) *Glaser* v. *Pullman & Comley, LLC*, 88 Conn. App. 615, 624, 871 A.2d 392 (2005).

It is not in dispute, and the court properly observed, that the plaintiffs bore the burden of demonstrating that their settlement with the Rytmans was objectively reasonable. "Where, as in the present case, an insured alleges that an insurer improperly has failed to defend and provide coverage for underlying claims that the insured has settled the insured has the burden of proving that the claims were within the policy's coverage *and* that the settlements were reasonable. . . . The reasonableness of the settlement, in turn, should be examined under an objective standard. Reasonableness is determined according to factors such as, but not limited to, whether there is a significant prospect of an adverse judgment, whether settlement is generally advisable, [whether] the action is taken in good faith, and [whether it is] not excessive in amount . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 55–56, 730 A.2d 51 (1999).

As stated previously, the plaintiffs disclosed Faulkner for the purpose of demonstrating that their settlement with the Rytmans in the Connecticut National Bank action was objectively reasonable.[5] We must determine whether Faulkner's opinion, viewed in the light most

[5] See footnote 3 of this opinion.

favorable to the plaintiffs, adequately was based upon the facts of this case.

Faulkner set forth his opinion, as well as the basis for his opinion, during lengthy deposition testimony. We carefully have reviewed the testimony as well as the other materials submitted by the parties in connection with the motion to preclude and the motion for summary judgment. In his testimony, Faulkner summarized his understanding of the nature of the claims brought against the plaintiffs by the Rytmans, as follows. The claims centered on statements made by Samuel Kofkoff, a member of the advisory board at Connecticut National Bank. At a board meeting, Kofkoff stated that Julius Rytman, a bank customer, was delinquent in making payments on a debt owed to him. Shortly after this statement was made, and in response to it, the bank undertook a fraud inquiry related to the Rytmans' finances, which inquiry interfered in their business operations, causing them financial injury.

Faulkner testified that, in evaluating the settlement, he reviewed materials related to the Rytmans' claims against the plaintiffs, including the mediation statements of the parties, the pleadings and court rulings. In forming his opinion, he relied heavily on the mediation statements of the parties, which did not objectively evaluate the strength of the claims at issue. Faulkner testified that his evaluation was essentially limited to and based on the mediation statements of the parties. He did not independently investigate, from either a factual or legal perspective, the validity of their claims.[6]

[6] The plaintiffs argue that a genuine issue of material fact existed with regard to the materials upon which Faulkner based his review of the settlement. Thus, they argue that although he testified initially that he based his opinion on the mediation statements of the parties, he testified later that his opinion resulted from a review of other materials related to the claims. Also, in support of their argument, the plaintiffs rely on the testimony of the defendant's expert witness, Joel Rottner, that a review of mediation statements is a customary factual basis upon which an expert may evaluate the reasonableness of a settlement.

Faulkner revealed that he was unfamiliar, as well, with the opinion of several of the plaintiffs that the Rytmans' claims were without merit, and was unfamiliar with whether the plaintiffs had obtained expert evaluation in connection with those claims. He testified that, although it would be "a consideration" in forming his opinion about the reasonableness of the settlement, he was unfamiliar with and did not investigate a general release that the Rytmans gave the plaintiffs in October, 1987; a release that potentially relieved the plaintiffs of any liability in the Connecticut National Bank action. It is especially noteworthy that Faulkner testified that, although he deemed the truthfulness of the statements made by Samuel Kofkoff to the Connecticut National Bank's advisory board to be a significant consideration in evaluating the merits of the Rytmans' claims and, thus, the settlement at issue, he did not determine whether the statements were, in fact, truthful.[7]

Moreover, Faulkner testified that he was unfamiliar with specific facts surrounding the terms of the settlement of the claim related to Samuel Kofkoff's statements to the advisory board, the very subject of his

The plaintiffs' reliance on Rottner's testimony is unhelpful. Although a court may consider the type of facts on which experts in a particular field customarily base their opinion, even if such facts are inadmissible; Conn. Code Evid. § 7-4 (b); this proposition does not compel a conclusion that an expert may base his or her opinion on less than sufficient facts. Although Faulkner testified that he reviewed more than the parties' mediation statements, the problem remains that his testimony revealed that he did not undertake, or review, an independent and objective analysis of the merits of the Rytmans' claims or any legal defenses related thereto. An assessment of the settlement reached necessarily encompassed an assessment of the strength of the Rytmans' claims. Absent any objective assessment of whether these claims had merit, either factually or legally, and whether the plaintiffs could present any type of defense to the claims, it does not follow that Faulkner had a factual basis upon which to opine that the settlement was reasonable.

[7] The plaintiffs assert that an evaluation of the truthfulness of Samuel Kofkoff's statements to the board was "a determination . . . properly reserved to the trier of fact." We do not evaluate the truthfulness of Samuel Kofkoff's statements. We observe, however, that an assessment of the truth-

expert opinion. In this regard, Faulkner testified at his deposition that he had not reviewed the written settlement agreement of the parties, which encompassed settlements reached in several actions. Faulkner testified that he knew little, if anything, about the other claims. He testified that of the $3.15 million paid by or on behalf of the Rytmans to settle these various claims, he did not know what portion of this settlement was allocated to the specific claims at issue in the present litigation, arising from Samuel Kofkoff's statements to the board. Faulkner acknowledged that such an allocation of the settlement proceeds would have been helpful to his analysis.

The foregoing testimony reflects that Faulkner did not base his opinion, that the settlement of the relevant claims was reasonable, on an adequate investigation of the facts underlying the claims or an independent, or expert, evaluation of the merits of the claims or potential defenses. The record does not reveal that Faulkner was aware of the amount for which the plaintiffs ultimately settled the claims at issue.

The record, viewed in the light most favorable to the plaintiffs, does not reveal that Faulkner had an adequate factual basis upon which to evaluate whether there was a significant prospect of an adverse judgment against the plaintiffs, whether the settlement was advisable, whether the Rytmans' claims were brought in good faith or whether the amount for which the plaintiffs ultimately settled the claims at issue was excessive. Given these deficiencies, we conclude that Faulkner's opinion concerning the reasonableness of the settlement was without substantial value to a finder of fact and, therefore, properly was precluded by the court.

fulness of the statements was a significant factor in evaluating the merit of the Rytmans' claims. Thus, this assertion is not persuasive.

## II

Next, the plaintiffs claim that the court improperly granted summary judgment in the defendant's favor after granting its motion to preclude. We disagree.

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012).

As discussed in part I of this opinion, the plaintiffs bore the burden of demonstrating that their settlement with the Rytmans was objectively reasonable. "Reasonableness is determined according to factors such as, but not limited to, whether there is a significant prospect of an adverse judgment, whether settlement is generally advisable, [whether] the action is taken in good faith, and [whether it is] not excessive in amount . . . ." (Internal quotation marks omitted.) *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, supra, 249 Conn. 55–56.

The plaintiffs argue that they need not have presented expert testimony to demonstrate that their settlement with the Rytmans was objectively reasonable. The plaintiffs claim that a jury, without the assistance of expert

testimony, was capable of evaluating the merits of the Rytmans' claims against the plaintiffs in the Connecticut National Bank action, as well as whether the amount of the settlement was reasonable.

The plaintiffs assert that "the issues raised by the Rytmans in the [Connecticut National Bank action] are numerous and varied, and the events span many years." They argue, however, that the complexity of the case relates to the events at issue, not the factual issues presented by the claims in the present action. We are persuaded that many of the issues inherent in a complete assessment of the settlement reached by the parties in the present action are issues beyond the ken of an average juror. They necessarily required an evaluation of the legal strength of complicated claims and defenses. The myriad factors to be considered in evaluating a compromise in a case such as the present one, as well as the weight they should be afforded, required expert testimony.

The plaintiffs attempted to introduce testimony from Faulkner concerning the reasonableness of the settlement. In part I of this opinion, we concluded that the court properly excluded Faulkner's testimony. In the absence of relevant expert opinion testimony, the plaintiffs were unable to present sufficient evidence that the settlement was reasonable, an essential element of their cause of action. Accordingly, we conclude that the court properly granted summary judgment in the defendant's favor.[8]

### III

Finally, the plaintiffs argue that the court improperly denied five postjudgment motions. We disagree. We will address the motions at issue in turn.

[8] Alternatively, the plaintiffs argue that, in the absence of Faulkner's testimony, Robert Kofkoff could have presented expert opinion concerning the reasonableness of the settlement. For the reasons that are discussed in part III B of this opinion, the plaintiffs' reliance on Robert Kofkoff's opinion is unpersuasive.

## A

The plaintiffs filed separate motions to reargue the court's February 19, 2009 decisions granting the defendant's motion to preclude Faulkner's testimony and granting the defendant's motion for summary judgment. In a thorough memorandum of decision, the court denied both motions.

"The standard of review for a court's denial of a motion to reargue is abuse of discretion. . . . When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . .

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect, and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Citations omitted; internal quotation marks omitted.) *Liberti* v. *Liberti*, 132 Conn. App. 869, 874, 37 A.3d 166 (2012).

In connection with their motions to reargue, the plaintiffs submitted numerous exhibits to the court. These exhibits were not presented to the court prior to the filing of the motions to reargue. The court determined that the exhibits submitted to the court were available to the plaintiffs prior to the court's ruling on the motions at issue, yet had not been presented to the court. The court determined that there was no showing that the exhibits were newly discovered and that they could have been submitted to the court when the plaintiffs

filed their opposition papers to the defendant's motions to preclude Faulker's testimony and for summary judgment. Although there is authority for the proposition that a court may consider newly discovered evidence in ruling on a motion to reargue, a showing must be made that the evidence is, in fact, newly discovered. This was not done. The plaintiffs, on appeal, do not assert that these materials were newly discovered or that, in the exercise of due diligence, they could not have been submitted earlier. Rather, they argue that the submissions would have demonstrated that the court misapprehended material facts. Insofar as the plaintiffs challenge the court's determination on appeal, there is no merit to their argument.

Also, the plaintiffs argue that the court improperly denied the motions to reargue after rejecting their argument that the court applied an incorrect legal standard in evaluating the defendant's motion to preclude Faulkner's testimony. The plaintiffs asserted that, in connection with the defendant's motion for summary judgment, the court should have viewed Faulkner's testimony in the light most favorable to the plaintiffs and, in deciding whether such testimony was necessary, resolved all doubts in the plaintiffs' favor. Although the court did not consider the motion to preclude Faulkner's testimony in accordance with *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 610–11, as that decision was officially released after the court rendered the rulings at issue, we have concluded as a matter of law, in part I of this opinion, that Faulkner's testimony was inadmissible under *DiPietro*. Furthermore, in part II of this opinion, we have evaluated whether the court properly rendered summary judgment and have agreed with the court's analysis. Insofar as we have concluded that, under the proper standard of review, the court properly precluded Faulkner's testimony and properly granted the defendant's

motion for summary judgment, the present arguments do not present a reason to disturb the judgment of the trial court.

Lastly, the plaintiffs argue that the court improperly denied the motions to reargue because they demonstrated that the court's decision to preclude Faulkner's testimony was based on inconsistencies of fact and misapprehensions of material facts. Having reviewed the arguments raised in the motions to reargue as well as the court's memorandum of decision denying those motions, we conclude that the court's factual analysis is logical and supported by ample facts. To a large extent, the arguments raised reflect the plaintiffs' reliance on isolated evidence related to Faulkner, rather than a realistic evaluation of all of the evidence, particularly the testimony related to how Faulkner formed his opinion concerning the reasonableness of the settlement. Consistent and key representations made by Faulkner revealed that his opinion was not based on a thorough examination of all of the material factors related to the settlement.

## B

The court rendered summary judgment on February 19, 2009. On March 23, 2009, the plaintiffs, pursuant to Practice Book (2009) § 13-4 (g) (4),[9] filed a motion for the court to modify its scheduling order and to permit them to disclose Robert Kofkoff as an expert witness. The motion was accompanied by a disclosure of Robert

---

[9] Practice Book (2009) § 13-4 (g) (4) provides: "Any request for modification of the approved Schedule for Expert Discovery or of any other time limitation under this section shall be made by motion stating the reasons therefor, and shall be granted if (A) agreed upon by the parties and will not interfere with the trial date; or (B) (i) the requested modification will not cause undue prejudice to any other party; (ii) the requested modification will not cause undue interference with the trial schedule in this case; and (iii) the need for the requested modification was not caused by bad faith delay of disclosure by the party seeking the modification."

Kofkoff's opinions, as well as a summary of the basis of his opinions. On March 24, 2009, the plaintiffs, pursuant to Practice Book (2009) § 13-4 (g) (4), filed a motion to modify the scheduling order and to permit them to disclose Faulkner as an expert witness. The motion set forth a list of materials on which Faulkner based his opinion and was accompanied by an amended disclosure of Faulkner's opinions. The plaintiffs argued that either Faulkner or Robert Kofkoff could present expert testimony concerning the reasonableness of the settlement. The defendant objected to both motions.

In a thorough decision, the court denied these motions. The court observed that the parties agreed to an amended scheduling order concerning expert witness discovery that the court issued in July, 2008. At the time that the court issued the order, the deadline for the plaintiffs to disclose their expert witnesses (April 15, 2008) had passed, as had the date by which the depositions of such witnesses must have been completed (May 30, 2008). The deadline for the filing of dispositive motions in the case was October 1, 2008. The court rejected the argument advanced by the plaintiffs that a denial of their motions would be tantamount to the imposition of sanctions under Practice Book (2009) § 13-4 (h).[10] The court concluded that the plaintiffs' reliance on § 13-4 (h) was misplaced and rejected the plaintiffs' attempt to equate the denial of its motions with the imposition of sanctions. The court, clarifying the nature of the matter before it, explained that because it had not been presented with a motion to

---

[10] Practice Book (2009) § 13-4 (h) provides: "A judicial authority may, after a hearing, impose sanctions on a party for failure to comply with the requirements of this section. An order precluding the testimony of an expert witness may be entered only upon a finding that (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately be addressed by a less severe sanction or combination of sanctions."

preclude testimony under § 13-4 (h), but merely a request for permission to amend the scheduling order, it was not imposing sanctions of any nature.

The court concluded that the relief sought would, "without question," interfere with the agreed upon trial schedule and cause obvious prejudice to the defendant, which had expended considerable time and expense in deposing Faulkner, in bringing the motion to preclude Faulkner and in bringing the motion for summary judgment. The court observed that the plaintiffs failed to present a legally justifiable basis for failing to make these expert disclosures at an earlier time in accordance with the scheduling order. The court stated: "Their request to be permitted to disclose expert testimony again, after the court's adjudication of [the prior] motions, is yet another effort at an impermissible second bite of the apple. . . . There is no legal justification for permitting the plaintiffs to turn back the clock and to start again in another effort to attempt to provide expert testimony which has a sufficient factual basis. If the court permitted that now, more than a year after the deadline for disclosing plaintiffs' experts, the dispositive motion process followed by the parties and the court would be rendered meaningless. Likewise, long-ago completed discovery would be reopened just before trial. Having fully litigated and prevailed on the motion to preclude and the motion for summary judgment, [the defendant] would be unduly prejudiced if the court were to ignore its own adjudications and afford the plaintiffs another opportunity to provide expert testimony." The court stated that granting the plaintiffs' motions effectively would sanction noncompliance with the court's scheduling orders and afford the plaintiffs "an unfair opportunity to attempt to avoid the summary judgment process."

The plaintiffs, on appeal, do not challenge the court's determination that their disclosure was untimely, but instead argue that the court's rulings should be set aside because they amounted to a disproportionate sanction under Practice Book (Rev. to 2009) § 13-4 (h). The plaintiffs argue that granting the motions would not have resulted in unfair surprise or undue prejudice to the defendant, nor would it have interfered in the progress of the trial. The plaintiffs assert that the rulings effectively deprived them of their day in court.

We review the court's ruling to deny the requested modification of the scheduling order and to preclude the late disclosure of witnesses under the abuse of discretion standard. As a general matter, under the abuse of discretion standard, "[w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Simms* v. *Chaisson*, 277 Conn. 319, 325, 890 A.2d 548 (2006).

The plaintiffs' motions fall under Practice Book (2009) § 13-4 (g) (4) because they sought the modification of the discovery schedule relating to the disclosure of the plaintiffs' expert witnesses. Thus, the court properly considered factors such as the reasons underlying the requested modification and whether the requested modification would cause prejudice to the defendant and/or undue interference with the trial schedule.[11] The court's explanation of its ruling is logical and fair; the basis of the ruling is not effectively challenged by the plaintiffs' bare assertions that granting their motions would not have prejudiced the defendant or the timely

[11] See footnote 9 of this opinion.

and planned progress of the trial. Further, it is clear from the representations of the plaintiffs, before the trial court and this court, that there is no compelling reason for the untimely efforts for disclosure, apart from a strategic reevaluation of their evidence following the court's earlier rulings. This action was commenced in 2003; the plaintiffs had an ample opportunity to present expert testimony in accordance with a discovery schedule to which they agreed. Under these circumstances, we do not conclude that the court's rulings reflected an abuse of discretion.

## C

On March 24, 2009, in conjunction with their motions to modify the court's scheduling order and to permit late disclosures, the plaintiffs filed a motion to set aside and/or open the summary judgment rendered by the court on February 19, 2009. Therein, the plaintiffs argued that, if the late disclosure was permitted, Faulkner and/or Robert Kofkoff would satisfy the evidentiary deficiency on which the court rendered summary judgment. On this basis, the plaintiffs argued, the court should set aside and/or open the judgment rendered in the defendant's favor.

The court, concluding that the plaintiffs had not presented a legally justifiable basis for setting aside the judgment, denied the motion. On appeal, the plaintiffs, relying on the strength of their motions to modify the scheduling order and to permit the late disclosures, argue that the ruling reflected an abuse of discretion.

"A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The

manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Walton* v. *New Hartford*, 223 Conn. 155, 169–70, 612 A.2d 1153 (1992).

Having concluded, in part III B of this opinion, that the court did not abuse its discretion in denying the plaintiffs' motions for permission to modify the scheduling order and to permit late disclosure of expert witnesses, we further conclude that the court did not abuse its discretion in denying the motion to set aside and/or open its earlier judgment.

The judgment is affirmed.

In this opinion the other judges concurred.