******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER J. AVOLETTA ET AL. *v.* STATE
OF CONNECTICUT
(AC 35704)

Alvord, Bear and Harper, Js.*

*Argued April 24—officially released August 12, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Sheridan, J.)

*Deborah G. Stevenson*, for the appellants (plaintiffs).

*Mark F. Kohler*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Jane R. Rosenberg*, assistant attorney general, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiffs, Peter J. Avoletta, Matthew Avoletta, and their mother, Joanne Avoletta, appeal from the judgment of the trial court dismissing their action against the defendant, the state of Connecticut, for lack of subject matter jurisdiction. The plaintiffs claim that the court erred in holding that the General Assembly's joint resolution in 2011 enabling them to sue the defendant was an unconstitutional public emolument. We disagree and affirm the judgment of the trial court.

The following relevant facts, as set forth in the court's May 6, 2013 memorandum of decision, and procedural history are relevant to our resolution of this appeal. "In their complaint, the plaintiffs allege that the defendant failed to provide Peter Avoletta and Matthew Avoletta a free appropriate public education in a safe setting in violation of their rights under the federal and state constitutions and under numerous state statutes.

"Specifically, the plaintiffs allege the following. From August, 1999 through June, 2002, Peter attended Torrington Middle School, and from August, 2002 through June, 2003, he attended Torrington High School. From August, 1997 through June, 2003, Matthew attended Torrington Elementary School. The plaintiffs allege that at all relevant times, the defendant failed to ensure that Torrington Middle School and Torrington High School were properly maintained. The plaintiffs allege that those buildings incurred water leaks, bacteria, mold, dampness, and poor indoor air quality.

"As a result of the poor conditions, Peter and Matthew suffered physical ailments. . . . [D]uring the 2003-2004 school year, Peter received homebound instruction from Torrington High School. For the 2004-2005 and 2005-2006 school years, the plaintiffs requested that Peter be placed in an out-of-district public or private school, rather than return to Torrington High School. Torrington did not acquiesce to this request, and Peter's parents placed him in a private school at their own expense from August, 2004, through his graduation in June, 2006.

"As to Matthew . . . Matthew's physician recommended that the environment in the middle school, which Matthew was to enter in August, 2003, was hostile to a child with Matthew's conditions and that Matthew's attendance at Torrington Middle School was 'medically contraindicated.' From August, 2003, through his graduation in June, 2010, Matthew attended a private school. The plaintiffs now seek reimbursement for tuition and costs for the private education. . . .

"On May 2, 2007, the plaintiffs filed a notice of claim to the Claims Commissioner alleging essentially the same facts presently before the court. Following a motion for summary judgment by the [defendant],

which included multiple grounds, the Claims Commissioner dismissed the claim, stating: 'This claim seeks to address matters occurring more than one year prior to the date of the filing. . . . The commissioner lacks subject matter jurisdiction. The claim is dismissed because it was filed outside of the statutorily prescribed one year time limit.'

"Subsequently, the plaintiffs, pursuant to General Statutes § 4-158, sought review of the Claims Commissioner's decision from the legislature, stating that the commissioner incorrectly ruled on their case. The plaintiffs sought either a monetary award or the right to [sue the defendant]. In the alternative, the plaintiffs sought a special act, pursuant to [General Statutes] § 4-148 (b), declaring that despite the claim's untimeliness, the plaintiffs should be granted the right to [present their claim to the Claims Commissioner].

"On May 27, 2011, and June 8, 2011, respectively, the House [of Representatives] and the Senate voted unanimously to approve House Joint Resolution No. 11-34, which states, in relevant part: 'Resolved by this Assembly . . . Sec. 2. That the decision of the Claims Commissioner, file numbers 21101, 21102 and 21103 of said commissioner, ordering the dismissal of the claims against the state in excess of seven thousand five hundred dollars of Joanne Avoletta, Peter J. Avoletta and Matthew Avoletta, is vacated and the claimants are authorized to institute and prosecute to final judgment an action against the state to recover damages as compensation for injury to person or damage to property, or both, allegedly suffered by the claimants as set forth in said claims. Such action shall be brought not later than one year from the date of the final adoption by the General Assembly of this resolution.'

"On May 10, 2012, the plaintiffs instituted this action. On July 30, 2012, the defendant filed this motion to dismiss on the ground that the plaintiffs' claims are barred by the doctrine of sovereign immunity. The [defendant] argues that the joint resolution that gave the plaintiffs the right to sue was not done in accordance with proper legislative procedure. The [defendant] further argues that, even if the resolution was validly executed, it is constitutionally infirm as a public emolument." The court held with respect to the defendant's first argument: "[U]nder the facts and circumstances of the present case, the legislature was within its rights to grant the right to sue via a joint resolution." It held with respect to the defendant's second argument: "Allowing the plaintiffs to file suit directly in this matter, when this court has determined that their action was untimely, provides them a right unavailable to other parties. While the legislature need not enact a special act when vacating the Claims Commissioner's dismissal of the matter, allowing a plaintiff with an untimely claim to circumvent § 4-148 (b) without any explanation or

public purpose constitutes a public emolument when the action is untimely." The court accordingly concluded that the defendant was entitled to sovereign immunity and granted its motion to dismiss for lack of subject matter jurisdiction. This appeal followed.

I

LEGAL STANDARDS

A

Standard of Review

"We begin by setting out the applicable legal principles and standard of review. A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting grant of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *Hayes Family Ltd. Partnership* v. *Glastonbury*, 132 Conn. App. 218, 221, 31 A.3d 429 (2011).

"When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . [I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citation omitted; internal quotation marks omitted.) Id., 221–22.

B

Sovereign Immunity

"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends. . . . The doctrine of sovereign immunity operates as a strong presumption in favor of the state's immunity from liability or suit. . . . [T]o circumvent the strong presumption of sovereign immunity in an action for monetary damages, the burden is on the plaintiff to show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity . . . . In the absence of a statutory waiver of sovereign immunity,

the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." (Citations omitted; internal quotation marks omitted.) *DePietro* v. *Dept. of Public Safety*, 126 Conn. App. 414, 417–18, 11 A.3d 1149, cert. granted on other grounds, 300 Conn. 932, 17 A.3d 69 (2011).

"When sovereign immunity has not been waived, the . . . commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim. . . . The . . . commissioner, if he deems it just and equitable, may sanction suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." (Citation omitted; internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 732, 846 A.2d 831 (2004).

"Section 4-148 (a) sets forth the time frame in which a claimant must present a claim to the Claims Commissioner. Specifically, that subsection provides that 'no claim shall be presented . . . but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act or event complained of.' General Statutes § 4-148 (a).

"Subsection (b) of § 4-148 provides a legislative exception to the time frame for obtaining a waiver of sovereign immunity. 'The General Assembly may, by special act, authorize a person to present a claim to the Claims Commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose. . . .' General Statutes § 4-148 (b)." *Morneau* v. *State*, 150 Conn. App. 237, 255–56, 90 A.3d 1003 (2014).

"A claimant [also] may seek review by the General Assembly in certain cases where the Claims Commissioner has denied or dismissed the claim requesting permission to sue the state. General Statutes § 4-158 (b) (1). If such request for review is made, the Claims Commissioner must submit the claim, a copy of the Claims Commissioner's findings and a hearing record of the claim to the General Assembly for review. General Statutes § 4-159 (a) (2). The General Assembly will then either confirm the decision of the Claims Commissioner; see General Statutes § 4-159 (b) (1) (A); or vacate the decision, order payment of the claim in a specified amount or authorize the claimant to sue the state. See General Statutes § 4-159 (b) (1) (B)." *Morneau*

v. *State*, supra, 150 Conn. App. 248.

## II

### THE PLAINTIFFS' CLAIM

The plaintiffs have articulated their claim as follows: "The trial court abused its discretion in granting the motion to dismiss when it improperly concluded that Joint Resolution No. 11-34, adopted pursuant to General Statutes §§ 4-158 and 4-159, vacating the state Claims Commissioner's decision and allowing the plaintiffs to sue the [defendant], is constitutionally proscribed as a public emolument." The plaintiffs make the following arguments in support of their claim. First, the plaintiffs contend that the court failed to apply the correct standard of review because it did not consider the entire record and did not consider the factual allegations in the complaint in the light most favorable to them. The plaintiffs further argue on this point that the court's failure to apply the correct standard of review affected its determination regarding the timeliness of their action. Second, the plaintiffs contend that the court erred in applying § 4-148 (b) to determine whether the resolution was an unconstitutional public emolument because the General Assembly acted pursuant to §§ 4-158 and 4-159, not § 4-148, when it passed the resolution. Third, the plaintiffs contend that the court's review of the resolution was an ultra vires act in violation of § 4-148 (b). Finally, the plaintiffs contend that the court erred in holding that the resolution was an unconstitutional public emolument because the defendant did not meet its burden of "demonstrat[ing] that the sole objective of the General Assembly [was] to grant personal gain or advantage to an individual." (Internal quotation marks omitted.) *Chotkowski* v. *State*, 240 Conn. 246, 257, 690 A.2d 368 (1997). We are not persuaded.[1]

In resolving the plaintiffs' claim, we look to a case recently decided by this court, *Morneau* v. *State*, supra, 150 Conn. App. 237, for guidance.[2] *Morneau* also involved: (1) the Claims Commissioner's dismissal of the plaintiff's request for permission to sue the state defendants because the request was untimely; (2) the plaintiff's subsequent request to the General Assembly for review of the Claims Commissioner's decision under § 4-158 (b); (3) the same joint resolution at issue in the present case, granting the plaintiff the right to sue the defendants;[3] and (4) the trial court's judgment of dismissal of the plaintiff's action on the ground of sovereign immunity and therefore lack of subject matter jurisdiction. Id., 242–45. One of the claims on appeal in *Morneau* was that the trial court erred in holding that the resolution was an unconstitutional public emolument with respect to the plaintiff in *Morneau*. Id., 254. The defendants in *Morneau* argued "that the resolution did not contain a statement of public purpose and benefited only the plaintiff, and therefore the court properly determined that it violated the Connecticut constitu-

tion." Id., 254–55. This court agreed with the defendants.

Like the plaintiff's claim in *Morneau*, the plaintiffs' claim in the present case challenges both the court's determination that their action was untimely and the determination that the resolution was an unconstitutional public emolument with respect to them. "[O]ur inquiry [therefore] is twofold: Whether the court properly decided that [the plaintiffs' cause] of action [was] untimely and, if so, whether it properly concluded that the resolution did not serve a public purpose and therefore was unconstitutional." Id., 256.

We look to *Lagassey* v. *State*, supra, 268 Conn. 735–36, for further explanation regarding the twofold nature of our inquiry: "[T]he plaintiff will prevail if she can demonstrate that the initial determination of the commissioner concerning noncompliance with § 4-148 (a) was mistaken . . . [because if that is the case], it could not be said that the plaintiff had been given any special privilege . . . . In order for the defendant to prevail, however, not only must we agree with the commissioner and the trial court that the plaintiff's claim was untimely as a matter of law, but we must also be unable to discern any conceivable justification for [the] challenged legislation from the public viewpoint . . . . Put another way, in order for the plaintiff to prevail, it is sufficient to show that her claim was not untimely as a matter of law; in order for the defendant to prevail, we must determine that [the resolution][4] furthers no public purpose, which . . . necessarily is predicated upon a determination that the plaintiff's claim was untimely as a matter of law." (Citations omitted; footnote added; internal quotation marks omitted.)

A

Whether the Plaintiffs' Action was Untimely

The plaintiffs argue that the court erred in concluding that their action was untimely under § 4-148 (a) because it disregarded certain facts alleged in the complaint and established by the record that demonstrated that their claim accrued less than one year before they filed their notice with the Claims Commissioner. We are not persuaded.

In addressing this argument, we look to *Morneau*, which, in turn, looked to *Lagassey* v. *State*, supra, 268 Conn. 723: "In its analysis, our Supreme Court considered General Statutes § 52-584[5] when it interpreted § 4-148 (a). Both statutes provide that the limitation period begins to run when a plaintiff either sustains or discovers the injury or, in the exercise of reasonable care, should have discovered the injury, and both statutes contain a three year period of repose. . . . The limitation period for actions in negligence begins to run on the date when the injury is first discovered or in the exercise of reasonable care should have been discovered. . . . In this regard, the term injury is synonymous

with legal injury or actionable harm. Actionable harm occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for actionable harm. . . . Furthermore, actionable harm may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another. . . . In this regard, the harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run; a party need only have suffered some form of actionable harm." (Citations omitted; internal quotation marks omitted.) *Morneau* v. *State*, supra, 150 Conn. App. 257–58.

The court in the present case determined: "Here, the plaintiffs' claims are all based in the fact that Peter Avoletta and Matthew Avoletta were denied a fair and appropriate public education. The plaintiffs undisputedly discovered a harm by the time Peter and Matthew were taken out of the Torrington public schools. Peter received homebound education in 2003-2004 and attended private school thereafter. Matthew attended private school from 2003-2004 until his graduation. Regardless of the specific dates of these actions, the plaintiffs were clearly aware of the school conditions far more than a year before the May 2, 2007 filing with the Claims Commissioner.

"The plaintiffs contend, however, that they were unaware of harm caused by the state until a later date. The plaintiffs acknowledge that, in 2005, upon the local school district's denial of their claim for alternative school placement under the federal Individuals with Disabilities Education Act (IDEA) [20 U.S.C. § 1400 et seq.], the state Department of Education and state Office of Protection and Advocacy for Persons with Disabilities advised the plaintiffs to seek review of the school district's denial. The denial was confirmed after review, apparently also in 2005. The plaintiffs allege that the [defendant] did not, at that time, advise the plaintiffs that they could further appeal. The plaintiffs allege that they were unaware of this right for review until they hired private counsel in 2006. They argue, therefore, that they were not aware that they had an actionable claim until after they hired counsel. The date of the actionable harm cannot be delayed until the plaintiffs acquired counsel. Even if the date of the harm is as late as the [defendant's] failure to advise the plaintiffs of their rights in 2005, the 2007 filing with the Claims Commissioner was untimely."

The plaintiffs argue that the court applied the wrong

standard of review because it disregarded certain factual allegations in the complaint and certain testimony that they gave to the legislature when the court determined that their action was untimely. They make this argument in support of their position that their May 2, 2007 notice of claim to the Claims Commissioner was timely because they brought it within one year of September 15, 2006, which is when they allege that former "Attorney General Richard Blumenthal requested interim education Commissioner George Coleman to monitor the actions of the Torrington School District and ensure that the District has taken the appropriate required and recommended corrective action with respect to providing a suitable environment for students who have health problems that may be exacerbated by unsatisfactory indoor environmental conditions in school buildings." (Internal quotation marks omitted.) According to the plaintiffs, September 15, 2006, is the date when their claim accrued because they "only became aware of the [defendant's] failure to [perform the actions requested by Blumenthal] . . . sometime thereafter and . . . [they] filed their claim with the Claims Commissioner only seven months later . . . ."

We disagree. The plaintiffs seem to argue that the statute of limitations on their claim began to run when the defendant failed to act in accordance with Blumenthal's September 15, 2006 communication to Coleman. Yet, the date that they use in their statute of limitations analysis is the date of the communication, not the date of the defendant's alleged failure to comply with the communication. We further note that the plaintiffs have not provided any analysis or authority to explain how September 15, 2006, or any date within one year of May 2, 2007, qualifies as the date when they "discover[ed], or in the exercise of reasonable care, should have discovered the essential elements of" their claim; (internal quotation marks omitted) *Morneau* v. *State*, supra, 150 Conn. App. 257; that the defendant violated certain state constitutional and statutory provisions by failing to provide "a free appropriate public education to [Peter Avoletta and Matthew Avoletta] in a safe school setting without discrimination due to their disabilities."

This court previously has stated with respect to the statute of limitations in § 52-584 that it "begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. . . . The focus is on the plaintiff's knowledge of facts, rather than on discovery of applicable legal theories." (Internal quotation marks omitted.) *Wojtkiewicz* v. *Middlesex Hospital*, 141 Conn. App. 282, 287, 60 A.3d 1028, cert. denied, 308 Conn. 949, 67 A.3d 291 (2013). We apply this language in this case because, as previously discussed, both this court and our Supreme Court have drawn comparisons between the statute of limitations in § 52-584 and the statute of limitations in § 4-148 (a), which presently is at issue. We agree with the court that the

plaintiffs' decisions to remove Peter Avoletta and Matthew Avoletta from the Torrington public school system in 2003 and 2004 demonstrate that the plaintiffs "discover[ed] some form of actionable harm" and had "knowledge of facts"; (internal quotation marks omitted) id.; underlying their claim well before September 15, 2006. We are not persuaded by the plaintiffs' attempts to demonstrate otherwise by directing our attention to certain facts alleged in the complaint and established by the record that pertain to their communications with the defendant and various of its agents between 2003 and 2007. Even when viewed in the light most favorable to the plaintiffs, these alleged facts demonstrate the plaintiffs' earlier discovery and knowledge of the occurrence of the alleged actionable harm underlying their claim.[6] We thus reject the plaintiffs' argument that the trial court misapplied the law in concluding that their claim was untimely.

B

Whether the Resolution Was an Unconstitutional Public Emolument

The plaintiffs also argue that the court erred in holding that the resolution was an unconstitutional public emolument because the court misapplied the relevant law, the defendant did not meet its burden of demonstrating that the sole basis of the resolution was the plaintiffs' personal gain, and the General Assembly reasonably could have concluded that the resolution served a public purpose, given the evidence before it. We are not persuaded.

The court determined: "Here, the plaintiffs have been granted two rights not otherwise given to the public. First, the plaintiffs have been given the right to pursue an untimely claim. Second, because the legislature did not find the claim untimely, the plaintiffs have been given the right to pursue this suit in Superior Court without receiving a decision on the merits from the Claims Commissioner as would have occurred if the legislature correctly concurred with the Claims Commissioner's decision regarding timeliness and either upheld the commissioner's decision or chose to use § 4-148 (b) to send the matter back to the commissioner for further proceedings.

"In the joint resolution, the legislature has offered no public purpose for granting the plaintiffs such rights. The resolution says only that the plaintiffs may sue. The legislative history does nothing more to illuminate a public purpose. . . .

"Allowing the plaintiffs to file suit directly in this matter, when this court has determined that their action was untimely, provides them with a right unavailable to other parties. While the legislature need not enact a special act when vacating the Claims Commissioner's dismissal of the matter, allowing a plaintiff with an

untimely claim to circumvent § 4-148 (b) without any explanation or public purpose, constitutes a public emolument when the action is untimely." (Citations omitted.)

*Morneau* is wholly dispositive of the plaintiffs' argument: "To prevail under article first, § 1, of our constitution,[7] the state must demonstrate that the sole objective of the General Assembly is to grant personal gain or advantage to an individual. . . . If, however, an enactment serves a legitimate *public* purpose, then it will withstand a challenge under article first, § 1. . . .

"The scope of our review as to whether an enactment serves a public purpose is limited. [W]hat constitutes a public purpose is primarily a question for the legislature, and its determination should not be reversed by the court unless it is manifestly and palpably incorrect. . . . In determining whether a special act serves a public purpose, a court must uphold it unless there is no reasonable ground upon which it can be sustained. . . . Thus, if there be the least possibility that [the special act] will be promotive in any degree of the public welfare . . . we are bound to uphold it against a constitutional challenge predicated on article first, § 1 [of the state constitution]. . . .

"In this regard, although a special act passed under § 4-148 (b) will undoubtedly confer a direct benefit upon a particular claimant, we have found a public purpose if it remedies an injustice done to that individual for *which the state itself bears responsibility*. . . . In such circumstances, the benefit conferred upon a private party by the legislature may be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state. . . .

"By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. . . . Similarly, where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment. . . .

"Section 32 of the resolution authorizes the plaintiff, and only the plaintiff, to commence a lawsuit against the state for his alleged injuries, as detailed in the claim presented to the Claims Commissioner. Notably absent in this case was a declaration that it served a public purpose, nor can we discern one. It merely provided the plaintiff with an exclusive and private benefit. No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an

individual. . . . Although we are mindful of the heavy burden assumed by those who challenge the constitutionality of legislative actions . . . we conclude that the court properly determined that the resolution in the present case violated the state constitution's prohibition against public emoluments . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Morneau* v. *State*, supra, 150 Conn. App. 260–62.

Other than their respective references to the specific claimants and their file numbers, §§ 2 and 32 of the resolution are worded identically. The holding of this court in *Morneau* that the resolution was an unconstitutional public emolument with respect to the plaintiff in that case therefore applies with equal force to the plaintiffs in this case. For this reason, the plaintiffs' argument fails.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] We summarily reject two of these four arguments. We reject the plaintiffs' argument that the court erroneously relied on § 4-148 (b) in determining that the resolution was an unconstitutional public emolument because the court came to its conclusion on the basis of article first, § 1, of the state constitution, not § 4-148 (b). See part II B of this opinion. We also reject the plaintiffs' argument that the court's review of the resolution was an ultra vires act in violation of § 4-148 (b). That statutory subsection provides in relevant part that "an express finding that . . . authorization [to present an untimely claim to the Claims Commissioner] is supported by compelling equitable circumstances and would serve a public purpose . . . shall not be subject to review by the Superior Court," but here, the General Assembly made no such finding. General Statutes § 4-148 (b).

[2] Even though *Morneau* postdates the trial court judgment, "[a]s a general rule, judicial decisions apply retroactively. . . . A decision will not be applied retroactively only if (1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 835 n.4, 59 A.3d 247, cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013). None of these considerations are at issue in the present matter.

[3] As previously noted, § 2 of the resolution granted the plaintiffs the right to sue the defendant. Section 32 of the resolution granted the plaintiff in *Morneau* the right to sue the state defendants in that case. With the exception of information specific to the present plaintiffs in § 2 and information specific to the plaintiff in *Morneau* in § 32, the two sections are identical.

[4] At issue in *Lagassey* was a special act passed pursuant to § 4-148 (b) that allowed the plaintiff to present to the Claims Commissioner her otherwise untimely claims against the state defendants. *Lagassey* v. *State*, supra, 268 Conn. 725–26. In contrast, at issue in the present case is a resolution passed pursuant to § 4-159 (b) (1) (B) (ii) that allowed the plaintiffs to bring their otherwise untimely action against the defendant in Superior Court. We nonetheless cite this language from *Lagassey* because its applicability is not affected by the nature of the legislative act at issue.

[5] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years

from the date of the act or omission complained of . . . ."

[6] The plaintiffs argued in opposition to the motion to dismiss that "the continuous course of conduct doctrine toll[ed] the statute of limitations." The court rejected their argument and concluded: "Because the plaintiffs discovered the harm far more than one year prior to filing their action, the continuous course of conduct doctrine does not apply." The plaintiffs have not challenged that ruling on appeal.

[7] "Article first, § 1, of the constitution of Connecticut provides: 'All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community.' " *Morneau* v. *State*, supra, 150 Conn. App. 260 n.25.