******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GEORGE SPATTA, JR. *v.* AMERICAN CLASSIC
CARS, LLC, ET AL.
(AC 35303)

Gruendel, Sheldon and Pellegrino, Js.

*Argued January 16—officially released May 6, 2014*

(Appeal from Superior Court, judicial district of
Litchfield, Pickard, J. [judgment]; Danaher, J. [motions
to open and to reargue].)

*Paul M. Cramer*, for the appellants (defendants).

*Randall J. Carreira*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. This case arises from the alleged breach of an oral agreement between the plaintiff, George Spatta, Jr., and the defendants, American Classic Cars, LLC, and its member and operator, Gus J. Paoli, pursuant to which the defendants agreed to build the plaintiff a new 1957 Chevrolet Belair Convertible for the price of $10,000 over the cost expended by the defendants to build it. The defendants claim on appeal that the trial court improperly denied their motion to reargue their earlier motion to open and set aside a default against them for failing to comply with the court's discovery orders.[1] We disagree and therefore affirm the judgment of the trial court.

The trial court set forth the following detailed recitation of the procedural history of this case. "The plaintiff . . . filed his complaint on August 2, 2010, which alleged that, in 2007, the defendants, holding themselves out to be experts at car assembly, offered to build a 1957 Chevrolet Bel Air Convertible as a new car for a total cost between $110,000 to $121,000. The complaint alleges that the project was to be completed in three months. . . . The complaint further alleges that the project was not completed in three months. In fact, the plaintiff did not receive the car until September, 2009. The plaintiff claims that he eventually paid over $200,000 for the vehicle which, he claims, is riddled with defects to the point that it cannot be driven. The plaintiff's exasperation with the defendants' allegedly recalcitrant behavior did not abate with the filing of the complaint. The chronology that brought the case to this point must be detailed in order to understand why the defendants' motion to reargue must be denied.

"The plaintiff served a set of interrogatories and requests for production . . . on April 4, 2011. The defendants immediately sought a thirty day extension of time in which to respond to the plaintiff's discovery requests. At the end of that thirty day period, however, the defendants failed to file any responses. On June 8, 2011, the plaintiff moved for default for failure to comply with discovery.

"On July 25, 2011, the court . . . ruled on the plaintiff's motion for default as follows: 'Compliance is ordered by 8/25/11. If the [plaintiff] has not received compliance by that date, he may file an additional motion for default attesting to that fact and referencing this order. Upon the appearance of that additional motion on the short calendar, and absent the filing of a notice of compliance by the time of such appearance, a default may be granted.'

"On August 5, 2011, the defendants filed a notice of compliance with plaintiff's discovery. On August 15, 2011, the plaintiff moved for sanctions, alleging that the defendants' compliance was, in large part, nonrespon-

sive. A particular shortcoming in the responses involved the plaintiff's request for documents illustrating the cost of parts to the defendants. Instead, and with no accompanying explanation, the defendants simply produced a document showing the cost of parts that the defendants had billed to the plaintiff.

"In the course of ruling on the motion for sanctions, the court did not impose the sanction of default that was threatened in the court's July 25, 2011 order. Instead, the court . . . gave the defendants another opportunity to meet their discovery obligations, ruling on August 31, 2011, as follows: 'The court has reviewed the entirety of the plaintiff's interrogatories and requests for production and has also reviewed the entirety of the defendants' responses to those interrogatories and requests for production. The defendants have provided partial compliance to some of the interrogatories and for that reason a default will not enter at this time. However, the defendants have not materially complied with all discovery requests. In particular, the defendants' responses to interrogatories 11, 13, 22, 25, and 26 do not reflect a good faith effort to comply with the defendants' discovery obligations. Further, the discovery responses by . . . Paoli are wholly inadequate. The responses to all seven requests for production are woefully deficient and suggest bad faith by the defendants. The court notes, in particular, that the defendants' representation that 'if plaintiff's counsel is unhappy with said [discovery] responses he can depose the defendant and inquire of same' reflects a gross misunderstanding of their obligation to respond, in good faith, to properly propounded interrogatories and requests for production. In view of the history regarding discovery issues in this case, the inadequate responses by the defendants justify the imposition of sanctions at this time. [See] Practice Book [§] 13–14 (b). Having found that the defendants are in violation of Practice Book [§] 13–14 (a), the defendants will pay the plaintiff $250 as a reasonable attorney's fee for the costs associated with the plaintiff's motion for sanctions. Said payment will be made no later than September 14, 2011. Further, the defendants will, no later than September 14, 2011, provide full and good faith responses to the interrogatories identified in this order, and will further provide full and good faith compliance with all seven requests for production. If the defendants fail to comply with this order by September 14, 2011, a default will enter.'

"On September 12, 2011, instead of providing the compliance ordered, the defendants elected to move to reargue the court's August 31, 2011 order, arguing, inter alia, that the defendants, 'despite many manpower hours,' did not have documents showing their costs relative to the project. The defendants argued that it would be 'unduly burdensome' to make them elaborate further relative to one of their interrogatory responses. The defendants also professed not to know how to

elaborate on their answer to interrogatory 25, which requested that the defendants 'state the qualifications of all persons associated with the assembly of the vehicle which is the subject of this action.' The defendants asserted that they were unable to provide any response other than, 'all members have extensive experience with working on motor vehicles.' The defendants stated that they required the court's guidance as to how to respond to that, and other, interrogatories and requests for production.

"The court denied the defendants' motion to reargue on September 20, 2011. On September 28, 2011, the plaintiff again moved for sanctions because, despite the orders entered to that point, the defendants still had not made good faith efforts to respond to the plaintiff's discovery requests. The plaintiff also noted that the defendants had elected to ignore the court's order that they pay sanctions in the amount of $250 'no later than September 14, 2011.'

"On October 4, 2011, the defendants objected to the plaintiff's September 28, 2011 motion for sanctions, claiming that they had effected supplemental compliance. Notably, however, the defendants made no reference to the court's order imposing a monetary fine on the defendants. On October 13, 2011, the third judge in this judicial district to consider these issues examined the state of the discovery compliance and ruled as follows: 'For the reasons given in the plaintiff's reply to the defendant's objection, the defendant has still not fully complied, including the payment of the previous sanction. A further monetary sanction seems inadequate. Therefore, a default is entered against the defendant.'

"On November 1, 2011, the defendants moved to reargue [the] order entering a default against them.[2] That motion was denied on November 8, 2011. On January 13, 2012, the defendants moved to open [and set aside] the default, claiming that they had produced all responsive documents 'presently' in their possession, that they had paid the monetary fine and that they had otherwise fulfilled their discovery obligations.

"The plaintiff objected to the motion to open [and set aside] the default and reviewed the defendants' purported compliance which asserted, inter alia, that the defendants were searching for the documentation regarding their costs, and that the documents would be produced in 'four to six weeks.' The defendants did not explain the basis for that estimate, an estimate that is especially troubling in view of the representations made on September 12, 2011, implying that the responsive documents did not exist. Furthermore, the plaintiff advised the court that the monetary fine that the defendants were ordered to pay no later than September 14, 2011, had been sent to the plaintiff in the form of a check dated January 12, 2012. On January 30, 2012,

[the] court denied the motion to open [and set aside] the default."

On February 21, 2012, the defendants filed a motion to reargue the denial of the motion to open and set aside the default. By way of a memorandum of decision filed April 5, 2012, the court denied the defendants' motion to reargue their motion to open and set aside the default, wherein it concluded that the "defendants are unlikely to ever meet their [discovery] obligations in good faith" and that their "violation of the court's orders was wilful and the absence of the entry of a default would result in prejudice to the plaintiff." This appeal followed.

"The standard of review for a court's denial of a motion to reargue is abuse of discretion." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 843, 59 A.3d 247, cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013). Likewise, "[t]he determination of whether to set aside [a] default is within the discretion of the trial court . . . and will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfortune or other reasonable cause . . . factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Internal quotation marks omitted.) *Bohonnon Law Firm, LLC* v. *Baxter*, 131 Conn. App. 371, 381, 27 A.3d 384, cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011).

"In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. . . . First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

The defendants claim that the court improperly denied their motion to reargue their motion to open and set aside the default on the grounds that (1) the

order that they were alleged to have violated was not clear; (2) they had complied with the subject discovery orders prior to the entry of the default; and (3) the sanction of a default was not proportional to the alleged violation of the court's order. We are unpersuaded.

In ruling on the defendants' motion to reargue, the trial court addressed the *Millbrook Owners Assn., Inc.*, requirements. The court found that its "multiple orders that the defendants respond in good faith to the plaintiff's interrogatories and requests for production were quite clear." Those discovery requests, the court determined, that related to the defendants' costs of building the subject vehicle were "at the core of the controversy" between the parties. The court noted that the defendants initially claimed that they did not possess documentation regarding their costs. The defendants then claimed that they "would be assembling the documents 'within four to six weeks.' " The court concluded that the documents were clearly requested by the plaintiff and the court's multiple orders that they be produced were clear. The court further concluded that the defendants' statement that they were in the process of assembling the documents and that they would be produced within four to six weeks "establishes that the defendants understood what the plaintiff was seeking and what the court had ordered them to produce." On the basis of our review of the record, we agree with the trial court that the discovery requests and the court's orders requiring compliance with those requests were clear.[3]

The trial court also found that its orders had been violated. In light of the fact that the defendants had missed the multiple deadlines imposed by the court for compliance, in addition to the fact that the defendants even ignored the deadline by which they were to pay the sanction ordered by the court, this finding cannot reasonably be disputed. We thus conclude that the court's finding of noncompliance was not clearly erroneous.

The defendants also claim that the sanction imposed by the trial court, the default, was not proportional to the discovery violations at issue. The trial court found that the documents sought by the plaintiff were central to his case and that he had been trying to obtain them for over a year, without success, even in the face of multiple court orders mandating compliance with his requests. The court explained that "the discipline imposed was progressive yet unavailing," noting that it first imposed deadlines that were ignored, then a fine that was also ignored, and, finally, entered a default as the only remaining option. The court concluded that the discovery sought by the plaintiff was material to the case, that the defendants' violations of the court's orders were wilful, that it had "exhausted its available means of moving this case forward in a timely and

efficient manner," and that the absence of the entry of a default would result in prejudice to the plaintiff. We agree with the trial court and thus cannot conclude that the default was not proportional to the defendants' conduct.

On the basis of the foregoing, we conclude that the court did not abuse its discretion in denying the defendants' motion to reargue their motion to open and set aside the default.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Following the entry of the default, the court held a hearing in damages, after which it awarded damages to the plaintiff. The defendants do not challenge any aspect of that judgment in this appeal.

[2] "In that motion, the defendants asserted that payment of the monetary fine that was due on September 14, 2011, 'will be forthcoming.' "

[3] The defendants claim that the "lack of clarity as to proper compliance with the court's order was the product of the intertwined issues of liability and damages arising from an oral contract." In making this claim, the defendants argue that the documents requested may or may not exist, depending on which party's theory of the case prevails. In other words, according to the defendants, "if the plaintiff's argument on the terms of the contract is correct then seemingly additional records should have been kept and thereafter produced. Conversely, if the defendants' argument on the contract terms is correct then creating such records would have served no purpose and thus did not exist so as to be produced. . . . [I]t is this tangled interplay between liability and damages that precluded the production of documents that did not exist." It is this type of game playing that resulted in the default of the defendants. The documents either exist or they do not. The existence of the documents is not established on the basis of the success of a party's theory of liability.