ELIZABETH BAILLERGEAU *v.* L. BENET
MCMILLAN ET AL.
(AC 34450)
(AC 34451)

Lavine, Robinson and Pellegrino, Js.

Argued November 27, 2012—officially released July 2, 2013

*L. Benet McMillan*, self-represented, and *Doloures Denise Codrington McMillan*, self-represented, the appellants (defendants).

*James B. McCarthy*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The self-represented defendants, L. Benet McMillan (Benet McMillan) and Doloures Denise Codrington McMillan (Doloures McMillan), appeal from the judgment of the trial court rendered in favor of the plaintiff, Elizabeth Baillergeau, and the subsequent judgments of the trial court denying their motions to open and reargue the underlying judgment.[1] On appeal, the defendants claim that the court improperly found that Benet McMillan fraudulently conveyed property to his wife, Doloures McMillan, to avoid a creditor, and

---

[1] The defendants originally filed two appeals challenging the court's underlying judgment and the denial of their motions to open and reargue, respectively. This court sua sponte ordered the consolidation of the appeals on May 7, 2012.

that the judgment should be opened to allow reargument with respect to that finding and the consequent order that the transfer be set aside and title to the property restored to Benet McMillan. We affirm the judgments of the trial court.

The following facts, as found by the court, and procedural history are relevant to this appeal. Kathryn McMillan, the mother of the plaintiff and Benet McMillan, was a teacher in the Stratford school system until she retired in the late 1970s and joined the Peace Corps. When she retired, she had a residence in Stratford (Stratford property) and a savings account, and she was receiving retirement income into a checking account. Before Kathryn McMillan was sent to Africa with the Peace Corps, she arranged for her son Benet McMillan, an attorney specializing in estate law, to have his name put on her checking and savings accounts while she was gone. Benet McMillan also had access to other funds belonging to his mother through a power of attorney.

During his mother's time in Africa, Benet McMillan took tens of thousands of dollars for his own use from his mother's savings and checking accounts, as well as other funds that he testified he had obtained with the power of attorney. Of the money taken, $20,000 was used to purchase a residence located at 722 School Drive in Baldwin, New York (722 School Drive).

Kathryn McMillan returned to Connecticut but was confined to a nursing home as a result of dementia. She passed away on April 25, 2006. Prior to her death, Benet McMillan took funds from her account to upgrade the Stratford property for an intended sale. After her death, Benet McMillan applied to be and was appointed administrator of Kathryn McMillan's estate. There were no claims listed for or against the estate, and the only asset listed in the estate was the Stratford property.

The court granted him permission to sell that property for $345,000. On August 10, 2007, Benet McMillan completed the estate sale the Stratford property. After that time, he ignored repeated requests from the Probate Court for the district of Stratford for the payment of probate fees and the filing of an accounting. The Probate Court consequently appointed a successor administrator, who filed a claim against Benet McMillan.

On February 6, 2009, Benet McMillan filed a statement in lieu of accounting. The statement indicated a sale price of $320,000 for the Stratford property. After closing expenses, Benet McMillan indicated that the beneficiaries of the estate—he and the plaintiff—were to receive $126,902 each. He represented in the statement that the distribution had been made, but that representation was not true.

The plaintiff commenced the present action and filed a complaint dated July 12, 2010, alleging that, prior to the sale of the Stratford property, the defendants had obtained an oral agreement from the plaintiff under which the defendants would borrow a portion of the monies due to the plaintiff from Kathryn McMillan's estate so that the defendants could purchase 722 School Drive in Doloures McMillan's name. According to the complaint, because Doloures McMillan's purchase of 722 School Drive occurred prior to the sale of the Stratford property, the plaintiff allegedly believed that the oral loan agreement "had been abandoned" because her bequest monies were not yet available from the estate. The complaint further asserted that in April, 2006, the plaintiff moved into a residence located at 143 Martin Avenue in Hempstead, New York (Hempstead property), which was owned by Doloures McMillan. The plaintiff and defendants allegedly agreed orally that at some point in the future, the plaintiff would purchase the Hempstead property from Doloures McMillan, and that the money for the down payment for the purchase

would come out of the plaintiff's bequest; however, at an unspecified point in time during which the plaintiff resided at the Hempstead property, the plaintiff purportedly decided not to purchase that residence from Doloures McMillan and so notified the defendants.

Additionally, the complaint alleged that after the sale of the Stratford property in August, 2007, the plaintiff periodically requested payment of her bequest and an accounting of the estate from Benet McMillan, but that he always deferred these requests. After the filing of the statement in lieu of accounting in 2009, the plaintiff again requested that Benet McMillan pay her bequest and provide an accounting of the estate, but he again refused. According to the complaint, in the summer of 2009, the plaintiff and Benet McMillan spoke again about payment of the plaintiff's bequest monies, at which time Benet McMillan revealed that the defendants had, in fact, used the bequest to purchase 722 School Drive, and that the only way the defendants could pay the plaintiff her bequest was to sell the Hempstead property. Upon the sale of the Hempstead property in December, 2009, Benet McMillan allegedly paid the plaintiff $5700 in moving expenses and deferred any further discussion of payment of the plaintiff's bequest monies, claiming that before any distribution could be made, the parties would have to agree about the proper amount of setoffs resulting from the plaintiff's failure to purchase the Hempstead property herself and for expenses resulting from her tenancy. The complaint further alleged that Benet McMillan had made a false representation to the Probate Court regarding the distribution of the plaintiff's bequest, and that the defendants' failure to deliver the bequest to the plaintiff constituted a breach of constructive trust and conversion of the bequest funds.

In their answer, the defendants asserted, inter alia, that Benet McMillan had lent Doloures McMillan money

from the joint account he held with Kathryn McMillan to purchase 722 School Drive. The defendants claimed that the loan was not part of Kathryn McMillan's estate because the loan occurred prior to her death, and that there was no oral or written agreement with the plaintiff concerning any of the loaned money. The answer also alleged that the plaintiff owed various rent arrears and other reimbursements stemming from her occupancy at the Hempstead property and the defendants' purported belief that she would be purchasing that residence from Doloures McMillan, and that the plaintiff's failure to purchase that residence resulted in a decline in its value of approximately $100,000.

During a trial to the court, the court heard testimony from the parties regarding the estate and the various accounts, properties, and transactions underlying the claims alleged in the complaint and answer. The court also heard testimony regarding a transfer of property located at 716 School Drive in Baldwin, New York (716 School Drive). The evidence established that Benet McMillan and Doloures McMillan as tenants by the entirety, by quitclaim deed dated December 31, 2009, conveyed 716 School Drive to Doloures McMillan and her son, Simeon McMillan, as joint tenants with the right of survivorship "in consideration of [t]en [d]ollars and other valuable consideration paid . . . ." Benet McMillan admitted in his testimony that this transfer occurred after he had received letters from the plaintiff's attorney in November, 2009, regarding the distribution of funds from the estate. The plaintiff's counsel argued that Benet McMillan was insolvent following this transfer of his interest in 716 School Drive to his wife and her son.

The court also heard testimony from Doloures McMillan regarding, inter alia, the transfer of Benet McMillan's interest in 716 School Drive. She indicated that, prior to the transfer, she had trusted Benet McMillan to be

in charge of their finances, and that the transfer occurred after the December 2009 sale of the Hempstead property, when she discovered that a foreclosure was pending on her residence and that Benet McMillan owed somebody else money. Doloures McMillan testified that she was "furious" and demanded the transfer of Benet McMillan's interest in 716 School Drive because she needed more than just an apology from her husband; she " '[needed] something concrete.' And so that's why the exchange, and then [she] put [her] son on [the deed]." Doloures McMillan reiterated that the transfer occurred after she "[found] out [she had] a financial disaster," and that "[i]t had nothing to do with . . . going in cahoots with [her] husband."

In its memorandum of decision, dated January 9, 2012, the court concluded that the plaintiff never introduced "proper evidence that there was a constructive trust with respect to the purchase of [722 School Drive]." The court found, however, that the transfer of Benet McMillan's interest in 716 School Drive "for $10.00" was a fraudulent transfer. Although the court found that Doloures McMillan testified credibly about her reasons for seeking to divest her husband's interest in the property, the court concluded that the "more overriding purpose" was for Benet McMillan to avoid his obligation to the plaintiff and ordered: "The transfer is set aside and the defendants are ordered to restore title to the defendant Benet McMillan within thirty days." In addition, the court rendered a monetary judgment against Benet McMillan in the amount of $155,893 plus postjudgment interest.

On January 30, 2012, the defendants filed motions to open and to reargue claiming, inter alia, that the court "failed to take into account the plain language on the face of the [quitclaim] deed . . . which provided that the transfer was made 'in consideration of [t]en [d]ollars and other valuable consideration' and totally ignored

the issue of what was the 'other valuable consideration.'" The defendants asserted that the court had ignored the defendants' testimony regarding the purpose of the transfer of Benet McMillan's interest in 716 School Drive, and incorrectly concluded that the transfer was fraudulent based on its assumption that the transfer was for only $10. The defendants also sought to "offer documentation regarding the specific details of the amount of 'other valuable consideration'" Doloures McMillan paid to Benet McMillan for the transfer of his interest in the property.

The court heard argument on the defendants' motions to open and to reargue on February 27, 2012. During argument, Benet McMillan offered to present documents to the court regarding the consideration for the transfer of his interest in 716 School Drive. The court declined to accept the documents, stating, inter alia: "[The documents] weren't presented at the time . . . this matter was brought up, there was discussion, you referenced them. The idea is that a motion to reargue, the requirements are if you had it available at that time, then you had an obligation to present it. . . . [A]nd at the time, I could decide the credibility of all this stuff. A lot [of] things came in that I didn't think were credible, to tell you the truth, during this trial. . . . So that's it." Following the hearing, the court denied the motions to open and to reargue. These appeals followed. Additional facts will be set forth as necessary.

On appeal, the defendants claim that the court erred in: (1) misapprehending the language of the quitclaim deed and the defendants' testimony regarding the purported "other valuable consideration" given for Benet McMillan's interest in the property; (2) overlooking the applicability of General Statutes § 52-552b (2), which the defendants claim precludes a finding of fraudulent conveyance with respect to an interest in property held in a tenancy by the entireties; and (3) ordering that title

in 716 School Drive be restored to Benet McMillan when Simeon McMillan, one of the transferees of the property, was not a party to the litigation. We will address these claims in turn.

I

The defendants first assert that the judgment should be opened and reargument allowed to correct the court's misapprehension of the consideration purportedly given to Benet McMillan in exchange for the transfer of his interest in 716 School Drive. According to the defendants, the court ignored both the language on the quitclaim deed indicating that Benet McMillan transferred his interest in the property "in consideration of [t]en [d]ollars and other valuable consideration," as well as the defendants' testimony concerning the circumstances of the transfer and the consideration allegedly given. We are not persuaded.

"In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Eremita* v. *Morello*, 111 Conn. App. 103, 105–106, 958 A.2d 779 (2008). Likewise, "[t]he standard of review for a court's denial of a motion to reargue is abuse of discretion." (Internal quotation marks omitted.) *Fortin* v. *Hartford Underwriters Ins. Co.*, 139 Conn. App. 826, 843, 59 A.3d 247, cert. granted on other grounds, 308 Conn. 905, 61 A.3d 1098 (2013). "When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness. . . . As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did. . . .

"[T]he purpose of a reargument is . . . to demonstrate to the court that there is some decision or some principle of law which would have a controlling effect,

and which has been overlooked, or that there has been a misapprehension of facts. . . . It also may be used to address . . . claims of law that the [movant] claimed were not addressed by the court. . . . [A] motion to reargue [however] is not to be used as an opportunity to have a second bite of the apple . . . ." (Internal quotation marks omitted.) Id.

In support of their claim that the court misapprehended the value of the consideration given for Benet McMillan's interest in 716 School Drive, the defendants reiterated the testimony and documentary evidence before the court, asserted that the court wrongly interpreted this evidence,[2] and attempted to provide the court with additional documents purportedly demonstrating the court's misunderstanding of the facts. The defendants did not assert that this proffered documentation was newly discovered; rather, they simply asserted that they had compiled documents to correct the court's purported misapprehension of the nature of the consideration. Because this argument is effectively nothing more than an attempt to have an impermissible second bite of the apple with respect to the court's determination regarding the circumstances of the transfer of 716 School Drive, the court did not abuse its discretion in denying the defendants' motions.[3] See, e.g.,

---

[2] To the extent that the defendants have asserted that the court ignored and/or assigned improper weight to certain of the evidence before it at trial, we note that it is well settled that determinations as to credibility and weight of the evidence are within the sole province of the trial court as the finder of fact. See, e.g., Cadle Co. v. D'Addario, 268 Conn. 441, 462, 844 A.2d 836 (2004).

[3] The defendants further suggest on appeal that they did not submit the documents earlier because the court "failed to pursue a financial analysis of [the] transfer" during the trial and did not inform them that the documents were necessary. As the defendants recognize, however, the court mentioned the need for financial information during the hearing on September 21, 2011—yet, the defendants made no offer of the purportedly relevant documents on that day or when they returned to court on October 28, 2011, for the continuation of the trial.

*Fortin* v. *Hartford Underwriters Ins. Co.*, supra, 139 Conn. App. 843–44 ("In connection with their motions to reargue, the [movants] submitted numerous exhibits to the court. These exhibits were not presented to the court prior to the filing of the motions to reargue. . . . The [movants], on appeal, do not assert that these materials were newly discovered or that, in the exercise of due diligence, they could not have been submitted earlier. Rather, they argue that the submissions would have demonstrated that the court misapprehended material facts. Insofar as the [movants] challenge the court's determination on appeal, there is no merit to their argument."); *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 655–56, 905 A.2d 1256 (2006) (no abuse of discretion in denying motion to reargue and declining to consider new evidence where "the [movants] through their motion to reargue plainly were seeking the proverbial 'second bite' ").

II

Next, the defendants claim that the court overlooked § 52-552b (2),[4] which the defendants contend precludes a finding of fraudulent conveyance with respect to property held in a tenancy by the entireties. Because this claim was not presented sufficiently to the trial court, we decline to review it.

The following additional facts are relevant to this discussion. In the defendants' written motions to open and reargue, they relied solely upon the contention that

[4] General Statutes § 52-552b (2) provides in relevant part that for purposes of the Uniform Fraudulent Transfer Act, General Statutes §§ 52-552a to 52-552*l*, an "asset" is defined as "property of a debtor, but the term does not include . . . an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant." Because we decline to review the merits of the defendants' § 52-552b (2) claim, we do not reach the issue of whether this statute is applicable where the property at issue is located outside the state of Connecticut.

the court erred in ascertaining and valuing the consideration Benet McMillan received from Doloures McMillan in exchange for the transfer of his interest in 716 School Drive. The motions made no mention of § 52-552b (2). During the hearing on the defendants' motions, Benet McMillan stated: "[The court's] attention should be directed to the Connecticut Statute § 52-552b (2) which according to my reading, would exclude the residence from the section because it is—it is an asset that's not included in this section. That's my reading of the—of the section." Benet McMillan made no further argument on the applicability of the statute, and neither defendant mentioned the statute again at any other point during the hearing. The court's decision on the defendants' motions made no mention of § 52-552b (2), and the defendants did not seek articulation of that decision.

"Connecticut's appellate courts often have recognized that they are not obligated to consider claims not distinctly raised at trial and decided by the trial court." *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 704–705, 915 A.2d 916 (court did not consider plaintiff's claim where only argument to trial court was "cursory and superficial," and issue was "submitted to the trial court in a casual and incomplete manner and never was ruled on"), cert. denied, 282 Conn. 905, 920 A.2d 311 (2007); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial"). The requirement that a claim be "distinctly raised" at trial "means that [the claim] must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Iaquessa*, 132 Conn. App. 812, 814–15, 34 A.3d 1005 (2012); see also *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010) ("issue briefly suggested in trial court

is not distinctly raised" [internal quotation marks omitted]).

Here, the only discussion of § 52-552b (2) before the trial court was Benet McMillan's brief mention of the provision during oral argument on the motions to open and reargue, and his conclusory statement that his interest in 716 School Drive would be excluded under the section "according to [his] reading" of the statute. He did not quote the language of the statutory provision at issue, and neither defendant provided the court with any meaningful analysis of the statute's alleged relevance to this matter. The court made no response to Benet McMillan's argument during the hearing, and its decisions on the defendants' motions were silent as to this purported statutory argument. Under these circumstances, we conclude that the defendants did not "distinctly raise" the issue before the trial court, and, accordingly, we decline to review the merits of this claim.[5]

### III

Finally, the defendants claim that, even assuming the court's finding of fraudulent conveyance was correct, the court cannot enforce the portion of its order requiring restoration of title to Benet McMillan. Specifically, the defendants argue that because Simeon McMillan was a transferee on the deed to 716 School Drive but was never made party to the litigation or otherwise

---

[5] Similarly, to the extent that the defendants argue for the first time in their reply brief on appeal that New York Civil Practice Law and Rules § 5206 (a) exempts the value of Benet McMillan's interest in 716 School Drive from the satisfaction of a money judgment in the plaintiff's favor, and that the court improperly failed to set any limit on the amount of a lien the plaintiff could file against Benet McMillan's interest in the property, we also decline to address this argument. It is well settled that this court need not consider arguments raised for the first time in a reply brief. See, e.g., *Lawrence* v. *State Board of Education*, 140 Conn. App. 773, 780, 60 A.3d 961 (2013).

appeared in the matter, the court has no jurisdiction over him, and thus, the court's judgment could not be enforced against him.[6] Because the defendants did not present this argument to the trial court, we decline to review it here. See, e.g., *Remillard* v. *Remillard*, supra, 297 Conn. 351–52 ("to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party" [internal quotation marks omitted]).

The judgments are affirmed.

In this opinion the other judges concurred.

---

[6] We acknowledge that effectuating the order of the trial court setting aside the transfer of Benet McMillan's interest in 716 School Drive, which we affirm, will require Doloures McMillan to convey her interest in that property to Benet McMillan and will not affect the interest of Simeon McMillan, who is not a party to the underlying action. After the court-ordered transfer, the title to 716 School Drive will be held by Benet McMillan and Simeon McMillan as joint tenants.