******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# WILLIAMS GROUND SERVICES, INC. *v.* ROBERT F. JORDAN
## (AC 38333)

Alvord, Prescott and Bear, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant in connection with the defendant's failure to pay for landscaping and snow plowing services performed by the plaintiff at the defendant's property from 2001 through 2013. Following a trial to the court, the trial court found that the defendant had waived any statute of limitations defense by failing to raise it as a special defense, and, alternatively, that the defendant's several acknowledgments of the debt and the conduct of the parties tolled the statute of limitations. From the judgment rendered in favor of the plaintiff, the defendant appealed to this court. *Held*:

1. The trial court's finding that the statute of limitations had been tolled by the defendant's several acknowledgments of the debt was not clearly erroneous; although the defendant claimed that the evidence presented was insufficient to infer an unequivocal acknowledgment of the debt, his arguments concerned the credibility of the witnesses and the weight of the evidence, which were matters for the court as the trier of fact, and the court's finding that the defendant unequivocally acknowledged the debt was supported by the testimony and other evidence submitted, which included a $500 payment made by the defendant with a note on the check indicating that it was for his account, various statements by the defendant that he was unable to pay his outstanding balance, his promise that he would give the plaintiff a "fat check" upon the closing of the sale of his house, and his additional statement that the plaintiff would be paid when his house was sold.

2. The defendant could not prevail on his claim that the trial court improperly admitted, for the truth of their contents, certain photocopies of invoices, which he described as yearly summaries of the monthly bills allegedly delivered to him by the plaintiff over the course of a decade: the defendant having objected at trial on the ground that the invoices were incomplete business records, he failed to preserve any evidentiary claims related to a ground other than to lack of completeness, and accordingly, this court did not review those claims; with respect to the defendant's claim that the photocopies were not complete and accurate copies of the originals sufficient to satisfy § 8-4 (c) of the Connecticut Code of Evidence, which provides that a reproduction, when satisfactorily identified, shall be as admissible in evidence as the original, the plaintiff did not testify that reproductions of business records were being submitted into evidence, but rather sought to admit his original business records, which consisted of photocopies of the original invoices sent to the defendant that the plaintiff kept for his records, and, therefore, the trial court did not abuse its discretion in admitting the invoices into evidence.

Argued February 8—officially released June 27, 2017

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. Edward R. Karazin, Jr., judge trial referee.)

*Procedural History*

Action to recover damages for payment due for services rendered, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee; judgment for the plaintiff, from which the defendant appealed to this court. *Affirmed.*

*Robert D. Russo III*, with whom was *Colin B. Connor*,

for the appellant (defendant).

*Paul S. Nakian*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Robert F. Jordan, appeals from the judgment rendered, following a bench trial, in favor of the plaintiff, Williams Ground Services, Inc., on the plaintiff's claim of payment due for unpaid landscaping and snow plowing services. On appeal, the defendant claims that the trial court erred by (1) determining that the statute of limitations had been tolled because he unequivocally acknowledged the debt and (2) admitting certain documents that he argues are inadmissible under various provisions of the Connecticut Code of Evidence. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to the resolution of this appeal. The plaintiff's principal, Ronald Williams, beginning in approximately 2001, "performed lawn, cleanup, lawn maintenance, and snow plowing services" for the defendant at his single family home in Darien. These services were provided by Williams annually from 2001 through 2013, and were billed to the defendant, who made payments on an irregular and infrequent basis.

At some point, the plaintiff became aware that the defendant's house was for sale, and the two parties discussed the matter. When the sale of the home was imminent, the defendant asked the plaintiff to plow the driveway so that a moving company could move him out safely. The defendant indicated that the plaintiff would receive a "fat check" at the closing. He also indicated that the outstanding bill would be paid in full. The plaintiff acceded to the defendant's request and plowed the driveway.[1]

On January 6, 2015, the plaintiff commenced this action against the defendant to recover the outstanding balance due for his services. The defendant filed an answer and three special defenses asserting that (1) the plaintiff sought compensation for services he did not provide, (2) the plaintiff was not the entity the defendant knew to have performed work on his property, and (3) the plaintiff was not entitled to the punitive damages and attorney's fees he claimed. The parties subsequently submitted pretrial briefs in which the defendant for the first time raised a statute of limitations defense as a basis for dismissing the action, and the plaintiff argued that the continuing course of conduct doctrine tolled the statute of limitations.

On August 18, 2015, following a bench trial, the court issued its memorandum of decision. The court found that the defendant had waived any statute of limitations defense by failing to raise it as a special defense. Alternatively, the court found that the defendant's several acknowledgments of the debt and the conduct of the parties tolled the statute of limitations. The court also found that the defendant had not proved his first and

second special defenses, but it found, pursuant to his third special defense, that he had proved that the plaintiff was not entitled to punitive damages or attorney's fees. Finally, the court found in favor of the plaintiff on his claim for unpaid landscaping and snow plowing services, awarded him $32,558.70 in damages with taxable costs, and rendered judgment thereon. This appeal followed. Further facts and procedural history will be set forth as necessary for the resolution of this appeal.

I

The defendant claims that the court erred in finding that the statute of limitations was tolled by, inter alia, his acknowledgments of the debt.[2] We disagree.

Before addressing the court's determination that the applicable statute of limitations was tolled by the defendant's acknowledgments of the debt, we assess the trial court's reliance in this case on *Zatakia* v. *Ecoair Corp.*, 128 Conn. App. 362, 18 A.3d 604, cert. denied, 301 Conn. 936, 23 A.3d 729 (2011). The defendant claims that the court's reliance on *Zatakia* is misplaced.[3] This court held in *Zatakia* that, inter alia, the trial court had not committed clear error when it found that correspondence from the defendant's president was a clear acknowledgment of indebtedness. Id., 370–71.

The defendant claims on appeal that the court's "factual analogy" to *Zatakia*, in support of its determination that he acknowledged the debt, was misplaced because the cases are factually distinguishable and, thus, its determination that he unequivocally acknowledged the debt was clear error. We reject this argument because we disagree with the defendant's characterization of the manner in which the court relied on *Zatakia*. The court quoted *Zatakia* for the applicable legal standard to determine whether an unequivocal acknowledgment of a debt has tolled the statute of limitations. At no point did the court refer to or rely on the facts of *Zatakia* as set forth by the defendant.

The defendant also claims that, under the rule stated in *Zatakia*, the conduct of the parties in the present case was insufficient to infer an unequivocal acknowledgment of the debt and, thus, the court's determination was clearly erroneous.[4] We disagree.

"The [s]tatute of [l]imitations creates a defense to an action. It does not erase the debt. Hence, the defense can be lost by an unequivocal acknowledgment of the debt, such as a new promise, an unqualified recognition of the debt, or a payment on account. . . . Whether partial payment constitutes unequivocal acknowledgment of the whole debt from which an unconditional promise to pay can be implied thereby tolling the statute of limitations is a question for the trier of fact. . . .

"A general acknowledgment of an indebtedness may be sufficient to remove the bar of the statute. The governing principle is this: The determination of whether

a sufficient acknowledgment has been made depends upon proof that the defendant has by an express or implied recognition of the debt voluntarily renounced the protection of the statute. . . . But an implication of a promise to pay cannot arise if it appears that although the debt was directly acknowledged, this acknowledgment was accompanied by expressions which showed that the defendant did not intend to pay it, and did not intend to deprive himself of the right to rely on the [s]tatute of [l]imitations. . . . [A] general acknowledgment may be inferred from acquiescence as well as from silence, as where the existence of the debt has been asserted in the debtor's presence and he did not contradict the assertion. . . .

"We review the trial court's finding . . . under a clearly erroneous standard. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Citations omitted; internal quotation marks omitted.) *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 461–63, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002); see also *Zatakia* v. *Ecoair Corp.*, supra, 128 Conn. 369–70.

In the present case, the court found that the defendant's several acknowledgments of the debt tolled the statute of limitations. In support of this conclusion, the court relied on the testimony of the plaintiff, stating: "There was testimony by the plaintiff that the defendant said he was unable to pay the bill. There is testimony that the defendant said 'the property had been sold and the plaintiff would receive a fat check at the closing.' The defendant said 'the plaintiff would be paid when the house was sold.' " The court also found: "Exhibit 2 shows payment by the defendant on October 28, 2011, being check [number] 6067 showing a $500 payment with a note on the front that it was 'on account-2011' indicating to this court that there was money due, and this was payment on it."[5]

The defendant argues that evidence presented was insufficient to infer an unequivocal acknowledgment of the debt. Specifically, he asserts that the plaintiff's testimony regarding his promises to pay was "undocumented, uncorroborated, and self-serving hearsay testimony from the party directly and materially benefitted by said testimony."[6] Additionally, he argues that his testimony contradicts that of the plaintiff. All of these arguments go to credibility and the weight to be given

to the evidence presented. Credibility and weight of the evidence are matters for the finder of fact. *Baillergeau* v. *McMillan*, 143 Conn. App. 745, 754 n.2, 72 A.3d 70 (2013).

Having reviewed the record, we determine that the testimony and other evidence submitted to the court support the court's finding that the defendant unequivocally acknowledged the debt. The defendant acknowledges that the $500 payment could be considered as evidence of his unequivocal acknowledgment of the debt. He does not challenge any finding of the court made on the basis of this evidence. He merely claims that the amount of evidence supporting any such finding is sparse. Although this evidence concerning the $500 payment, standing alone, could be enough to support the court's finding that the defendant acknowledged the debt,[7] the court also considered the defendant's various statements that he was unable to pay his outstanding balance, his promise of a "fat check" upon closing, and his additional statement that the plaintiff would be paid when his house was sold. Any testimony by the defendant to the contrary, the plaintiff's interest in the outcome, and the plaintiff's lack of documentation and corroboration of the defendant's acknowledgments, are matters of credibility and weight that we do not consider independently on appeal. Accordingly, the defendant has failed to carry his burden of proving that the court's finding was clearly erroneous. The court's conclusion that the statute of limitations had been tolled by the defendant's several acknowledgments of the debt thus was not error.

## II

The defendant also claims that the court erred by admitting, for the truth of their contents, certain photocopies of invoices, which he describes as "yearly summaries," of the monthly bills allegedly delivered to the defendant over more than a decade. We disagree.

The following additional procedural facts are relevant to the resolution of this claim. When the plaintiff sought to admit the first invoice into evidence, which included landscaping charges for services performed over the course of 2001, the defendant objected as follows: "Your Honor, I'm going to object on the grounds that this is an incomplete business record. It has the top cut off of it. It has no date from when it was created and he doesn't really remember the specifics of when it was created." The court responded: "The objection is overruled. It goes to weight, not admissibility."[8]

On appeal, the defendant claims that the invoices are inadmissible because the yearly summaries were not business records under the legal definition and because the summaries, as photocopies, were incomplete business records and not complete and accurate copies of the originals sufficient to satisfy § 8-4 (c) of the Connect-

icut Code of Evidence. We reject this argument.

The defendant objected at trial that the invoices were "*incomplete* business record[s]," and the court, based on its ruling on the objection, understood his objection to go to completeness. The defendant did not seek to clarify or to add other grounds to his objection as each of the twenty-one other invoices was admitted into evidence.[9] The defendant, therefore, failed to preserve an objection related to a ground other than to lack of completeness.[10]

"Our role in reviewing evidentiary rulings of the trial court is settled. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 133, 998 A.2d 730 (2010. "In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Internal quotation marks omitted.) *State* v. *Rivera*, 169 Conn. App. 343, 366, 150 A.3d 244 (2016), cert. denied, 324 Conn. 905, 15 A.3d 544 (2017). "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection [to the trial court]. . . . This court reviews rulings solely on the ground on which the party's objection is based. . . . [W]e have explained that, to afford petitioners on appeal an opportunity to raise different theories of objection would amount to ambush of the trial court because, [h]ad specific objections been made at trial, the court would have had the opportunity to . . . respond." (Citation omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 133–34.

Because the defendant's objection was that the invoices were *incomplete* business records, he failed to preserve his evidentiary claims under §§ 8-4 (a), 10-2, and 10-5 of the Connecticut Code of Evidence. We, therefore, do not review these claims.

The defendant also claims that the invoices, as photocopies, were not complete and accurate copies of the originals sufficient to satisfy § 8-4 (c).[11] We disagree.

At trial, the defendant examined the plaintiff regarding the invoices prior to the admission of the first yearly invoice.[12] The plaintiff testified that he would leave the original invoices at the defendant's home and would keep a photocopy for his own records. He testified that the document sought to be admitted into evidence was one of these photocopies. The defendant asked whether the plaintiff had testified at his deposition that he gave

"the originals" to his attorney. The plaintiff clarified that he had photocopied the copies that he had kept for his records, kept those photocopies, and gave his attorney the copies that he first kept for his records.

Section 8-4 (c) of the Connecticut Code of Evidence provides that a "reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding . . . ." Although the defendant argues that the plaintiff sought to admit reproductions into evidence, the plaintiff sought to admit his *original business records*. His original *business records*, for the purposes of § 8-4 (c), were the photocopies of the invoices sent to the defendant that the plaintiff kept for his records. These were the documents that the plaintiff testified were being admitted into evidence. He did not testify that *reproductions* of business records were being submitted into evidence. The court, therefore, did not abuse its discretion when it admitted the invoices into evidence. In the circumstances of this case, any issue concerning whether they were substantively complete went to the weight to be given them and not to their admissibility. See *LPP Mortgage, Ltd.* v. *Lynch*, 122 Conn. App. 686, 699 n.11, 1 A.3d 157 (2010) ("[B]usiness records do not carry any presumption of accuracy merely because they are admissible. The credibility of such records remains a question for the trier of fact." [Internal quotation marks omitted.]).

In summary, the court's finding of several acknowledgments of the debt by plaintiff was not clearly erroneous. The court did not err in concluding that the applicable statute of limitations was tolled by the defendant's acknowledgments of the debt. The court did not abuse its discretion in admitting the plaintiff's business records into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court also found that prior to the sale of the defendant's real property, some confusion occurred because the plaintiff improperly filed a mechanic's lien on the land records for the estimated amount of his services, but money was held out at the closing to satisfy any damages awarded to the plaintiff from any legal action.

[2] We need not reach the defendant's claim that the court improperly found that he waived his statute of limitations defense by failing to raise it as a special defense, or that the statute of limitations was tolled by the continuing course of conduct doctrine because we affirm the court's alternative finding that the defendant's acknowledgments of the debt tolled the statute of limitations.

[3] The defendant also claims that an ancient case, *Weed* v. *Bishop*, 7 Conn. 128 (1828), controls. The court in *Weed* held that a creditor, as party to the case, was incompetent to testify to an acknowledgment of a debt. Id., 131–32. The defendant failed to raise *Weed* before the trial court as the controlling law in this case regarding the acknowledgment of the debt. Accordingly, the defendant failed to preserve his claim that the plaintiff was incompetent to testify to the defendant's acknowledgment of the debt. See *Jalbert* v. *Mulligan*, 153 Conn. App. 124, 143–44, 101 A.3d 279, cert. denied, 315 Conn. 901, 104 A.3d 107 (2014). Nevertheless, the defendant's reliance on *Weed* is misplaced because the General Assembly abolished the general common-law rule upon which *Weed* was based nearly 170 years ago. See

*State* v. *James*, 211 Conn. 555, 560, 560 A.2d 426 (1989) ("[i]n 1848 the common law disability of parties to testify as witnesses was removed by a statute now incorporated in General Statutes § 52-145 [a]").

[4] We note that the court appears to have raised sua sponte the tolling doctrine on the basis of the defendant's several acknowledgments of his debt to the plaintiff. At trial, the defendant did not object to the court's sua sponte insertion of such tolling doctrine into the case, and he has not raised the issue on appeal as it relates to any of his claims. We thus do not consider whether the court erred by inserting and relying on that doctrine.

[5] The defendant asserts that the court improperly considered a $2500 payment made by him in 2012 as part of its determination that he acknowledged the debt. As the defendant states, however, the court found that the payment was made as an advance payment and was made "in order to induce the plaintiff to continue working." The court, thus, did not consider this payment in determining that the defendant unequivocally acknowledged the debt.

[6] As statements of a party opponent, the plaintiff's testimony about the defendant's statements falls within an exception to the hearsay rule. Conn. Code Evid. § 8-3 (1).

[7] Having concluded that the defendant had waived any statute of limitations defense, the court did not determine whether the three year statute of limitations for oral contracts, General Statutes § 52-581, or the six year statute of limitations for written contracts, General Statutes § 52-576, would apply to this case. The $500 payment made in 2011 could have tolled the six year statute of limitations if it applied. Because there also was evidence that the defendant acknowledged the debt within three years of the commencement of the action, we need not decide which statute applies.

[8] The defendant made his objection to the first landscaping bill for 2001. He seems to have attempted to maintain his objection on the same grounds with respect to other billing documents, stating, "And if you're comfortable with it Your Honor, for expediency purposes, I don't need to voir dire every single invoice that looks like this," to which the court responded, "Okay." The plaintiff submitted twelve other similar annual landscaping invoices, eight snow plowing invoices covering 2003 through 2013, and a single invoice for extra work in 2005, 2008, 2011, and 2013. We assume that the defendant's objection was maintained for all of these documents even though these documents arguably differ.

[9] See footnote 8 of this opinion.

[10] The defendant also claims that the invoices were inadmissible because the plaintiff failed to establish that the documents were business records under § 8-4 (a) of the Connecticut Code of Evidence; that the plaintiff did not establish that the original documents qualified as summaries of voluminous writings or that the documents from which the summaries were prepared were admissible business records sufficient to satisfy § 10-5 of the Connecticut Code of Evidence; and that the plaintiff failed to establish that the summaries satisfied the best evidence rule under § 10-2 of the Connecticut Code of Evidence. These claims are not preserved, and, therefore, we do not discuss them.

[11] Section 8-4 (c) of the Connecticut Code of Evidence provides in relevant part: "[I]f any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process *which accurately reproduces* or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original." (Emphasis added.) Section 8-4 (c) of the Connecticut Code of Evidence was amended in 2015 to make technical changes that are not relevant to this appeal.

[12] The following exchange occurred between the defendant's counsel and the plaintiff:
"Q. Mr. Williams, is this a complete copy of the original?
"A. Yes, as far as I know.
"Q. It's not cut off at the top?

"A. No. Well, Williams Ground Service is in there. Sometimes when you put it in the copy machine it cuts it off.

"Q. But it is not a complete copy of the original invoice?

"A. It looks like one for me, except for the name at the top.

"Q. So it is cut off on the top?

"A. Yes.

"Q. Is [it] possible there's other writing up there that we can't see?

"A. It would just say Williams Ground Service.

"Q. Where are these original invoices?

"A. These are the only ones that I have. I—when I made these I gave the originals, left them at [the defendant's] and I keep the copy.

"Q. Didn't you say the other day you gave the originals to [your attorney]?

"A. In other words I copied and gave them to him off copies that I had. The originals—when I put the original bill, I would turn the originals in and I would keep a copy for myself. Okay. So—

"Q. Oh, turn them you mean give them to [the defendant]?

"A. That's correct. So then I would copy the bills I have and those are the bills that I gave to [my attorney]."

———————————————————